**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VICTOR CHO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PARAMOUNT GLOBAL,<br><br>Defendant. | Case No. 1:24-cv-08312-JPO |

**DEFENDANT PARAMOUNT GLOBAL'S**
**MOTION TO COMPEL ARBITRATION,**
**DISMISS THE PUTATIVE CLASS CLAIMS, AND STAY THE CASE**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant Paramount Global*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....... 1
BACKGROUND ....... 2
A. Plaintiff Agreed to Paramount's Terms and Arbitration Provision When Creating His Paramount+ Account ....... 2
B. The Terms of Use Included an Arbitration Agreement and Class Waiver ....... 3
C. Plaintiffs Breached Their Agreement by Filing this Lawsuit ....... 4
ARGUMENT ....... 4
I. The Court Should Compel Arbitration of Plaintiff's Claim ....... 4
A. The Arbitration Agreement Is Governed by the Federal Arbitration Act ....... 4
B. The Arbitration Agreement is Valid and Should be Enforced ....... 5
1. Plaintiff Entered into a Valid Arbitration Agreement ....... 6
2. The Arbitration Agreement is Not Unconscionable ....... 9
3. Plaintiff's Claim Falls within the Scope of the Arbitration Clause ....... 11
4. Plaintiff Refused to Arbitrate as Required ....... 12
II. The Court Should Dismiss the Putative Class Claims and Compel Plaintiffs to Proceed on an Individual Basis ....... 13
III. The Court Should Stay All Proceedings Pending Arbitration ....... 13
CONCLUSION ....... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....................13

*Aminoff & Co. LLC v. Parcel Pro, Inc.*,
2022 WL 987665 (S.D.N.Y. Apr. 1, 2022)....................8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................5, 10, 13

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017)....................7

*Biggs v. Midland Credit Mgmt., Inc.*,
2018 WL 1225539 (E.D.N.Y. Mar. 9, 2018)....................13

*Boustead Sec., LLC v. Leaping Grp. Co.*,
656 F. Supp. 3d 447 (S.D.N.Y. 2023)....................1

*Camilo v. Lyft, Inc.*,
384 F. Supp. 3d 435 (S.D.N.Y. 2019)....................5

*Capstone Logistics Holdings, Inc. v. Navarrete*,
2018 U.S. Dist. LEXIS 216940 (S.D.N.Y. Oct. 25, 2018), *aff'd & remanded*,
796 F. App'x 55 (2d Cir. 2020)....................6

*Carr v. Credit One Bank*,
2015 WL 9077314 (S.D.N.Y. Dec. 16, 2015)....................10

*Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*,
967 F. Supp. 2d 756 (S.D.N.Y. 2013)....................5

*Chestnut v. Whitehaven Income Fund I, LLC*,
2014 WL 5388562 (S.D.N.Y. Oct. 23, 2014)....................12

*Citigroup Inc. v. Sayeg Seade*,
2022 WL 179203 (S.D.N.Y. Jan. 20, 2022)....................6, 12

*Curtis v. JPMorgan Chase Bank, N.A.*,
2024 WL 283474 (S.D.N.Y. Jan. 25, 2024)....................7

*Daly v. Citigroup Inc.*,
939 F.3d 415 (2d Cir. 2019)....................12

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020)....................7, 8

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)....................6

*Flores v. Chime Fin., Inc.*,
2022 WL 873252 (S.D.N.Y. Mar. 23, 2022)....................10

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)....................8

*Garcia v. Nabfly, Inc.*,
2024 WL 1795395 (S.D.N.Y. Apr. 24, 2024)....................7

*Heckman v. Live Nation Entertainment, Inc.*,
120 F.4th 670 (9th Cir. 2024)....................11

*Holick v. Cellular Sales of N.Y., LLC*,
802 F.3d 391 (2d Cir. 2015)....................6, 12

*Horton v. Dow Jones & Co., Inc.*,
2019 WL 952314 (S.D.N.Y. Feb. 27, 2019), *aff'd*, 804 F. App'x 81 (2d Cir. 2020)....................13

*Hu v. Whaleco, Inc.*,
2024 WL 4481439 (E.D.N.Y. Oct. 1, 2024)....................7, 11

*Isaacs v. OCE Bus. Servs., Inc.*,
968 F. Supp. 2d 564 (S.D.N.Y. 2013)....................11

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015)....................14

*Klos v. Polskie Linie Lotnicze*,
133 F.3d 164 (2d Cir. 1997)....................10

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011)....................5

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)....................4

*Lewis v. Samsung Elecs. Am., Inc.*,
2023 WL 7623670 (S.D.N.Y. Nov. 14, 2023)....................9

*McDaniel v. Home Box Off., Inc.*,
2023 WL 1069849 (S.D.N.Y. Jan. 27, 2023)....................13

*McDougall v. Samsung Elecs. Am., Inc.*,
2023 WL 6445838 (S.D.N.Y. Oct. 3, 2023) ....................9

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....................8

*Ministers & Missionaries Benefit Bd. v. Snow*,
26 N.Y.3d 466 (2015) ....................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................5, 12

*New York v. Oneida Indian Nation*,
90 F.3d 58 (2d Cir. 1996)....................11

*Nicholas v. Wayfair Inc.*,
410 F. Supp. 3d 448 (E.D.N.Y. 2019) ....................11

*Peiran Zheng v. Live Auctioneers LLC*,
2021 WL 2043562 (S.D.N.Y. May 21, 2021) ....................7, 8

*Pincaro v. Glassdoor, Inc.*,
2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017)....................5, 7, 8

*Ragone v. Atl. Video at Manhattan Ctr.*,
2008 WL 4058480 (S.D.N.Y. Aug. 29, 2008), *aff'd*, 595 F.3d 115 (2d Cir. 2010) ....................12

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................9

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012)....................6

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
592 F.3d 329 (2d Cir. 2010)....................11

*Tsadilas v. Providian Nat'l Bank*,
786 N.Y.S.2d 478 (App. Div. 2004) ....................13

*Zaltz v. JDATE*,
952 F. Supp. 2d 439 (E.D.N.Y. 2013) ....................8

*Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*,
736 F. App'x 274 (2d Cir. 2018)....................10

*Zambrana v. Pressler & Pressler, LLP*,
2016 WL 7046820 (S.D.N.Y. Dec. 2, 2016) ....................6, 12

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ............................................................ *passim*

Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* ..............................................1, 4, 7, 9, 12

**Other Authorities**

NAM, Comprehensive Dispute Resolution Rules & Procedures, https://www.namadr.com/content/uploads/2024/10/Comprehensive-Rules-as-of-10.1.2024.pdf.....................................................................................................11

Defendant Paramount Global ("Paramount") respectfully moves to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), dismiss Plaintiff's putative class claims,[1] and to stay this proceeding under Section 3 of the FAA until the arbitrator enters a final award.

## INTRODUCTION

During the process of signing up for the Paramount+ service, Paramount clearly informed Plaintiff Victor Cho that "[b]y pressing 'Continue', you confirm that you have read and agree to the Terms of Use and acknowledge our Privacy Policy." The phrase "Terms of Use" appeared in blue, contrasting the surrounding gray text. The phrases "Terms of Use" and "Privacy Policy" were hyperlinks, and if Plaintiff clicked on either of these hyperlinks, the website directed him to the Terms of Use and Privacy Policy, respectively. Plaintiff assented to both the Terms of Use and Privacy Policy by clicking "Continue." The Terms of Use included an Arbitration Agreement that mandates arbitration of any dispute relating to the service and bars putative class claims.

Plaintiff disregarded the arbitration requirement and class action waiver in the Terms of Use he agreed to with Paramount and filed this putative class action in this forum. The Federal Arbitration Act and binding Supreme Court and Second Circuit precedent compel arbitration of Plaintiff's claim that Paramount violated the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* (the "VPPA") by allegedly sharing Plaintiff's video viewing histories with Meta and TikTok through use of the Meta Pixel and Conversions API and the TikTok Pixel, respectively. Compl. ¶¶ 5, 14. These claims relate to the Paramount+ service and fall squarely within the Arbitration

---

[1] Paramount is also filing a motion to dismiss. In doing so, Paramount does not waive its right to arbitrate. *Boustead Sec., LLC v. Leaping Grp. Co.*, 656 F. Supp. 3d 447, 453 (S.D.N.Y. 2023) ("Courts have long concluded that such pre-answer motion practice [like a motion to dismiss] does not constitute the sort of significant litigation that weighs in favor of finding that there has been a waiver of an arbitration agreement").

Agreement, which is valid and enforceable.

Plaintiff's claims also lack merit, and Paramount will prove so in arbitration. But Plaintiff cannot disregard the parties' agreement to engage in a streamlined and cost-efficient arbitration process designed to resolve these claims expeditiously. Accordingly, as explained further below, this Court should (i) compel Plaintiff to arbitrate his claims on an individual basis, (ii) dismiss the putative class claims, and (iii) stay the case pending resolution of Plaintiff's claims in arbitration.

## BACKGROUND

### A. Plaintiff Agreed to Paramount's Terms and Arbitration Provision When Creating His Paramount+ Account

Paramount+ is a paid video streaming service providing users with Paramount-branded entertainment and media content. *See* Declaration of Maureen Saraf (Saraf Decl.) ¶ 3. In his complaint, Plaintiff alleges that he "has had an account with Paramount . . . within the last two years since the filing of this Complaint," without providing the specific date he created his account. Compl. ¶ 5. However, Paramount's records indicate that Plaintiff created a Paramount+ account on August 21, 2024 through his Charter Communications Spectrum Cable Subscription ("Spectrum subscription"). *See* Saraf Decl. ¶ 4. At the time, Plaintiff could have initiated the sign-up process on either the Spectrum or Paramount+ websites. *See*, *e.g.*, Saraf Decl. ¶ 7. Regardless of the method, the website ultimately directed Plaintiff to paramountplus.com to create a Paramount+ account. Saraf Decl. ¶¶ 8, 9, Ex. C. The Paramount+ website then prompted Plaintiff to enter his name, email, zip code, password, birthdate, and gender. Saraf Decl. ¶ 10, Ex. C.

Next, the website displayed language stating, "[b]y pressing 'Continue', you confirm that you have read and agree to the Terms of Use and acknowledge our Privacy Policy." *Id.* The phrase "Terms of Use" appeared in blue, contrasting the surrounding gray text. Saraf Decl. Ex. C. The phrases "Terms of Use" and "Privacy Policy" were hyperlinks, and if Plaintiff clicked on

either of these hyperlinks, the website directed him to the Terms and Privacy Policy, respectively. Saraf Decl. ¶ 10, Ex. C. Plaintiff was then able to easily scroll through and read these policies. *Id*. The Terms on Paramount's website when Plaintiff created his account in August 2024 became effective on January 24, 2023. Saraf Decl. ¶ 5. These same Terms are still effective as of January 9, 2025, the date this motion was filed. *Id*. To finish creating an account, Plaintiff confirmed his assent to the Terms by clicking the "CONTINUE" button directly below the language acknowledging and agreeing to the Terms. Saraf Decl. ¶ 11.

**B. The Terms of Use Included an Arbitration Agreement and Class Waiver**

The Terms contain a conspicuous and binding arbitration agreement requiring parties to arbitrate their disputes with Paramount. Saraf Decl. ¶¶ 12, 13, Ex. B. The Terms noted in the first paragraph that "These Terms of Use ("Terms"), including the 'Dispute Resolution; Arbitration Agreement' provisions in Section 1 below, govern your use of our website[.]" Saraf Decl. Ex. B. Further down, under the "Dispute Resolution; Arbitration Agreement" heading, the Terms provide that:

> IF YOU OR WE HAVE **ANY DISPUTE WITH OR CLAIM** AGAINST THE OTHER (A "CLAIM") ARISING OUT OF OR RELATING IN ANY WAY TO THE SERVICES OR THESE TERMS . . . YOU AND WE EACH AGREE TO RESOLVE SUCH DISPUTES THROUGH AN INDIVIDUAL BINDING ARBITRATION OR AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT.

*Id.* at § 1 (emphasis added). Whether a user opts to proceed in arbitration or small claims court, the Terms are clear that "[c]lass arbitrations and class actions are not permitted[.]" *Id.* Additionally, the parties agree that "the U.S. Federal Arbitration Act governs the interpretation and enforcement of this provision, and [] you and we are each waiving the right to a trial by jury or to participate in a class action." *Id.* Finally, the Terms further state "[a]ny such arbitration shall be governed by applicable rules of National Arbitration & Mediation ('NAM') . . . as modified by

this Section 1 (the 'Arbitration Agreement'), and will be administered by NAM." *Id.* at § 1.2.

### C. Plaintiffs Breached Their Agreement by Filing this Lawsuit

Even though Plaintiff agreed to arbitrate disputes with Paramount upon creating his account and subscribing, Plaintiff filed this putative class action alleging violations of the VPPA, thereby breaching the Terms of Use. *See* Compl. ¶ 1. The Terms require arbitration of all claims related to the Paramount+ service, including Plaintiff's claim here, which is based on allegations that Paramount knowingly and intentionally disclosed Paramount+ users' "personally identifiable information—including a record of every video viewed by the user—to unauthorized third parties[.]" *Id.*; Saraf Decl. ¶ 12, Ex. B at § 1.[2]

## ARGUMENT

### I. The Court Should Compel Arbitration of Plaintiff's Claim

Plaintiff consented to arbitration of his claim when he created a Paramount+ account by clicking on the button confirming he had agreed to the Terms. Saraf Decl. ¶¶ 10, 11. The Terms to which Plaintiff agreed contained (i) an arbitration clause and (ii) a class waiver. Saraf Decl. ¶ 12, Ex. B at § 1. The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* ("FAA") applies to this arbitration agreement, and it "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019). Saraf Decl. ¶ 12, Ex. B. Under these facts, the Court should compel individual arbitration of Plaintiff's claim.

### A. The Arbitration Agreement Is Governed by the Federal Arbitration Act

The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid,

[2] As explained in Paramount's Motion to Dismiss, CBS Interactive Inc. ("CBSI") is the proper defendant here, not Paramount. In any case, however, the Terms of Use cover CBSI and "its affiliates[,]" including Paramount. Saraf Decl. ¶ 12, Ex. B at 1.

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Indeed, there is a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (citation omitted), and the FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (citation omitted). Under the FAA, courts must "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

The Terms state that the FAA "governs the interpretation and enforcement" of the agreement. Saraf Decl. ¶ 12, Ex. B at § 1. Moreover, in their complaint, Plaintiff suggests Paramount+ involves interstate commerce, alleging that Defendant is "a 'video tape service provider' . . . because it engaged in the business of renting, selling, and delivering audiovisual materials . . . and those deliveries affect interstate or foreign commerce." Compl. ¶ 46. In addition, this District recognized that the FAA covers online transactions and entertainment. *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (finding that the FAA governed a contract related "to internet transactions and rideshare services"); *Pincaro v. Glassdoor, Inc.*, 2017 WL 4046317, at *4-8 (S.D.N.Y. Sept. 12, 2017) (finding that website terms of use were governed by the FAA). Furthermore, the FAA also applies where, as here, the parties are citizens of different states. *Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 762 (S.D.N.Y. 2013). As such, the FAA clearly applies to this agreement and mandates moving this suit into arbitration. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22.

**B. The Arbitration Agreement is Valid and Should be Enforced**

Under the FAA, "a district court must grant a motion to compel arbitration [1)] if a valid arbitration agreement exists and [2)] if the scope of the agreement governs the issues in the case."

*Zambrana v. Pressler & Pressler, LLP*, 2016 WL 7046820, at *2 (S.D.N.Y. Dec. 2, 2016); *see also Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015); *Citigroup Inc. v. Sayeg Sead*e, 2022 WL 179203, at *5 (S.D.N.Y. Jan. 20, 2022). Both requirements are met here.

**1. Plaintiff Entered into a Valid Arbitration Agreement**

When determining the validity of an agreement to arbitrate under the FAA, federal courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Whether or not the parties have agreed to arbitrate is a question of state contract law."). This case has been brought within the state of New York and the Terms state that "all claims arising from or related to your use of the Services will be governed by and construed in accordance with the State of New York[.]" Saraf Decl. Ex. B § 15. As such, New York law properly governs Plaintiff's claims. *Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 475 (2015) (holding that choice of law provisions selecting New York law must be enforced by their terms, since "by including a choice-of-law provision in their contracts, the parties intended for only New York substantive law to apply."); *Capstone Logistics Holdings, Inc. v. Navarrete*, 2018 U.S. Dist. LEXIS 216940, at *66-67 (S.D.N.Y. Oct. 25, 2018) (explaining New York courts should not "consider the public policy of *foreign states*—including California—to overturn an otherwise valid contractual choice of law provision," lest such a consideration "swallow whole the *Ministers* holding that courts need not engage in conflicts analysis."), *aff'd & remanded*, 796 F. App'x 55 (2d Cir. 2020).[3] New York courts, including the Second Circuit, applying New York law, regularly affirm arbitration agreements similar to the agreement at issue in this case.

[3] In any event, even if the Court applied California law, "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term" which "makes a choice-of-law analysis unnecessary." *Curtis v. JPMorgan Chase Bank, N.A.*, 2024 WL 283474, at *3 (S.D.N.Y. Jan. 25, 2024) (citations omitted).

Agreements where website visitors assent to hyperlinked terms by affirmatively clicking a button along with reasonable notice of the terms at issue, as here, are enforceable like any other contract. Saraf Decl. ¶¶ 10, 11, Ex. C; *Peiran Zheng v. Live Auctioneers LLC*, 2021 WL 2043562, at *5 (S.D.N.Y. May 21, 2021) ("[t]herefore, the parties entered into a valid [arbitration] agreement when the plaintiff clicked 'AGREE' and continued to use the defendant's website."); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 831 (S.D.N.Y. 2020) (enforcing arbitration where users were given clear notice that "by clicking the Sign Up . . . button, you agree to our **Terms of Service** and **Privacy Policy**"); *Pincaro*, 2017 WL 4046317, at *1 (enforcing arbitration where sign-up page notified Plaintiff "that, by creating an account, they agree to be bound [by] the company's Terms of Use"); *Hu v. Whaleco, Inc.*, 2024 WL 4481439, at *3, *18 (E.D.N.Y. Oct. 1, 2024) (enforcing an arbitration agreement where signup page had reasonably conspicuous notice and hyperlink stating "[b]y continuing, you agree to our **Terms of Use** and **Privacy & Cookie Policy**."); *Garcia v. Nabfly, Inc.*, 2024 WL 1795395, at *2, *10 (S.D.N.Y. Apr. 24, 2024) (enforcing an arbitration agreement where the sign-up page had the following language below the "Create Account" button: "By creating an account, you agree to the Terms of Use and Privacy Policy."); *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *3, *13 (S.D.N.Y. Nov. 20, 2017) (explaining courts "have routinely upheld" agreements that "require a user to click an 'I agree' button after being presented with terms," and recommending a VPPA claim be arbitrated), *adopted by*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018). Here, Paramount similarly provided Plaintiff reasonable notification of the Terms on the Paramount+ account sign-up page, stating that "[b]y pressing 'Continue', you confirm that you have read and agree to the Terms of Use and acknowledge our Privacy Policy." Saraf Decl. ¶ 10, Ex. C. Plaintiff then manifested assent to the Terms by pressing the "CONTINUE" button immediately under this language. *Id.*

Courts also recognize that making terms and conditions available via hyperlink, as Paramount did here, Saraf Decl. ¶ 10, Ex. C, provides reasonable notice supporting an enforceable agreement. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) ("That the Terms of Service were available only by hyperlink does not preclude a determination of reasonable notice."); *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 454 (E.D.N.Y. 2013) (finding terms were "reasonably communicated" to plaintiff where she was required to check a box "next to the statement 'I confirm that I have read and agreed to the Terms and Conditions of Service' (with a hyperlink to the Terms and Conditions of Service over those words)."); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-41 (S.D.N.Y. 2012) (collecting cases applying hyperlinked terms against website users); *Peiran Zheng*, 2021 WL 2043562, at *5 ("[P]arties entered into a valid agreement when the plaintiff clicked 'AGREE'[,] . . . continued to use the defendant's website[, and] . . . had 'reasonable notice of the arbitration provision' in the hyperlinked Terms & Conditions."); *Aminoff & Co. LLC v. Parcel Pro, Inc.*, 2022 WL 987665, at *5 (S.D.N.Y. Apr. 1, 2022) (finding Plaintiff was on inquiry notice of terms due to relevant text "drawing the eye to the text, and providing a hyperlink to the Terms"); *Pincaro*, 2017 WL 4046317, at *6 ("a reasonably prudent user knows that text that is highlighted in blue and underlined is a hyperlink to another webpage where additional information will be found."); *Feld*, 442 F. Supp. 3d at 832 (finding terms of use reasonably conspicuous where "[t]he 'Terms of Service' and 'Privacy Policy' terms appear in blue type that contrasts with the sign-up page background, indicating that they are hyperlinks; the remainder of the text is black"). Here, as in those cases, the Terms and Privacy Policy were hyperlinked and reasonably conspicuous because they appeared in blue, contrasting with the surrounding gray text. Saraf Decl. Ex. C.

As such, Plaintiff plainly entered into a valid and enforceable written agreement to arbitrate

his VPPA claim which should be enforced.

**2. The Arbitration Agreement is Not Unconscionable**

Plaintiff does not and has no basis to allege that the arbitration agreement is unconscionable. Under the Paramount+ Terms of Use, Plaintiff assented to the arbitrator deciding "[a]ll issues, including the scope and enforceability of this Arbitration Agreement[.]" Saraf Decl. Ex. B at § 1.2. This provision is enforceable, meaning the issue of whether the arbitration agreement is enforceable must be resolved in arbitration. *Lewis v. Samsung Elecs. Am., Inc.*, 2023 WL 7623670, at *11 (S.D.N.Y. Nov. 14, 2023) (enforcing clause delegating resolution of enforceability issues to the arbitral provider and holding "[t]he arbitrator, not the Court, must decide whether the Arbitration Agreement is unconscionable"); *McDougall v. Samsung Elecs. Am., Inc.*, 2023 WL 6445838, at *7 (S.D.N.Y. Oct. 3, 2023) ("[P]arties may delegate the threshold question of arbitrability to an arbitrator, 'so long as the parties' agreement does so by clear and unmistakable evidence.'").

Even if the Court assessed whether the arbitration clause was enforceable, its assessment would be limited to evaluating whether the arbitration agreement (as opposed to the entire contract) is unconscionable. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010). Unconscionability encompasses a "'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh or 'one-sided' results." *Concepcion*, 563 U.S. at 340 (citation omitted).

The arbitration agreement here is not procedurally unconscionable. When assessing procedural unconscionability, courts look at "the contract formation process and the alleged lack of meaningful choice[.]" *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 F. App'x 274, 278 (2d Cir. 2018). Here, Plaintiff was not forced to make a Paramount+ streaming account as there are many alternatives to receive Paramount programming, including traditional cable and

other services. *See Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 169 (2d Cir. 1997) (airline flight ticket contract was not unconscionable where alternative destinations and modes of transportation existed for purchasers).

The Terms are also not "surprising." The sign-up page provided clear notice informing users that they were accepting the Terms by creating an account and subscribing. Saraf Decl. ¶ 10, Ex. C. The links to the Terms were plainly distinguishable from the surrounding text. *Id.* Further, the Terms mark the arbitration provision with clear headings, disclaimers in all capital letters, and contain plain English explanations regarding the implications of the agreement. Saraf Decl. ¶ 12, Ex. B. Indeed, the arbitration provisions are conspicuous, emphasized, and not hidden. *Carr v. Credit One Bank*, 2015 WL 9077314, at *3 (S.D.N.Y. Dec. 16, 2015) ("This arbitration clause was clear, conspicuous, and preceded by a heading written in all capital letters and bold print."); *Flores v. Chime Fin., Inc.*, 2022 WL 873252, at *5 (S.D.N.Y. Mar. 23, 2022) (granting motion to compel and finding Plaintiff "had reasonable notice of the arbitration provisions" where the website terms "contained bolded, capitalized, and otherwise conspicuous text.").

Plaintiff similarly cannot demonstrate substantive unconscionability of the Terms. *See Concepcion*, 563 U.S. at 340 (finding that a contract is substantively unconscionable if it leads to "'overly harsh' or 'one-sided' results"); *Hu*, 2024 WL 4481439, at *6 (finding arbitration agreement requiring batch arbitration was "not void under the plain language of the Terms, and Defendant [could] seek to compel arbitration"). The Terms require both Plaintiffs and Paramount to arbitrate claims, making the agreement mutual. Saraf Decl. ¶ 12, Ex. B. *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569-70 (S.D.N.Y. 2013) (arbitration agreement that applied to both parties was "not one-sided" and "not substantively unconscionable."). The Terms also incorporate a neutral third party's rules, which call for a neutral arbitrator, a written decision, and

discovery. NAM, Comprehensive Dispute Resolution Rules & Procedures, Rule Nos. 18, 22, 34, https://www.namadr.com/content/uploads/2024/10/Comprehensive-Rules-as-of-10.1.2024.pdf. This too precludes a finding of substantive unconscionability. *See Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 456 (E.D.N.Y. 2019) ("Use of American Arbitration Association rules does not render an arbitration agreement unconscionable.").[4]

**3. Plaintiff's Claim Falls within the Scope of the Arbitration Clause**

Plaintiff's claims clearly fall within the scope of Paramount's arbitration agreement. In determining whether parties intended for a specific matter to be within the scope of the arbitration agreement, "the general rule is that courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344 (2d Cir. 2010) (citing *First Options*, 514 U.S. at 944). A court must resolve all doubts about the scope of an arbitration agreement "in favor of arbitrability," *New York v. Oneida Indian Nation*, 90 F.3d 58, 61 (2d Cir. 1996); *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019). As New York law applies to the agreement with Plaintiff, the court must also consider New York's "strong public policy favoring arbitration." *Ragone v. Atl. Video at Manhattan Ctr.*, 2008 WL 4058480, at *6 (S.D.N.Y. Aug. 29, 2008), *aff'd*, 595 F.3d 115 (2d Cir. 2010).

The arbitration clause has been drafted to broadly cover disputes relating to the use of Paramount's offerings, including its websites. The Terms provide that "IF YOU OR WE HAVE ANY DISPUTE WITH OR CLAIM AGAINST THE OTHER . . . ARISING OUT OF OR

[4] The Ninth Circuit's decision in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024) does not establish otherwise. As explained, New York law—not California law—applies here, and Paramount's Terms of Use delegate enforceability decisions to the arbitrator. In addition, Paramount's Terms differ significantly from those in *Heckman*, and the concern there—that individuals would be bound by rulings in cases without being able to participate in those cases—is inapplicable here, given Plaintiff could arbitrate his individual claim. 120 F.4th at 684.

RELATING IN ANY WAY TO THE SERVICES OR THESE TERMS . . . YOU AND WE EACH AGREE TO RESOLVE SUCH DISPUTES THROUGH AN INDIVIDUAL BINDING ARBITRATION OR AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT." Saraf Decl. ¶ 12, Ex. B at § 1. The Second Circuit has noted that an arbitration clause is "broad" where the agreement requires "arbitration of any and all disputes[,]" like the agreement at issue here. *Zambrana*, 2016 WL 7046820, at *3; *Holick*, 802 F.3d at 394 (finding an agreement broad when it applies to "[a]ll claims, disputes, or controversies arising out of, or in relation to" an agreement). The "arising" language in the clause also creates a "presumption in favor of arbitrating Plaintiffs claims." *Chestnut v. Whitehaven Income Fund I, LLC*, 2014 WL 5388562, at *1 (S.D.N.Y. Oct. 23, 2014). Moreover, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Thus, Plaintiff's VPPA claim based on his alleged use of paramountplus.com falls well within the scope of the arbitration clause in the parties' agreement.

#### 4. Plaintiff Refused to Arbitrate as Required

Rather than initiate arbitration as required under the Terms, Plaintiff instead has filed a federal lawsuit. Plaintiff has therefore refused to arbitrate. *See Citigroup*, 2022 WL 179203, at *5, *7 (explaining that after considering whether a valid agreement to arbitrate exists, the court considers whether one party has "refused to arbitrate[,]" and that "[a] party can be deemed to have refused arbitration by filing a lawsuit on a matter that comes within the scope of the arbitration clause").

Because Plaintiff entered into a valid arbitration agreement and has refused to arbitrate, the Court should compel arbitration of his claim.

## II. The Court Should Dismiss the Putative Class Claims and Compel Plaintiffs to Proceed on an Individual Basis

Plaintiff's claims on behalf of a putative class are not only facially defective, but they also are precluded by Plaintiff's agreement to a class action waiver. Class action waivers like the one in the Terms of Use are enforceable under both the FAA and New York law. *See, e.g.*, *Concepcion*, 563 U.S. at 352 (holding such waivers enforceable under the FAA); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013) (Rule 23 does not "establish an entitlement to class proceedings for the vindication of statutory rights"); *Biggs v. Midland Credit Mgmt., Inc.*, 2018 WL 1225539, at *1, *9 (E.D.N.Y. Mar. 9, 2018) (dismissing class claims based on class waiver); *Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (App. Div. 2004) ("[U]nder New York law, 'a contractual proscription against class actions . . . is neither unconscionable nor violative of public policy'"). As such, these class waivers are enforceable, and the Court should dismiss Plaintiff's class claims. *See Horton v. Dow Jones & Co., Inc.,* 2019 WL 952314, at *2 (S.D.N.Y. Feb. 27, 2019) ("[t]he Class Waiver is enforceable and bars Plaintiff from proceeding on a class basis"), *aff'd*, 804 F. App'x 81 (2d Cir. 2020); *McDaniel v. Home Box Off., Inc.*, 2023 WL 1069849, at *4 (S.D.N.Y. Jan. 27, 2023) ("[b]ecause the class waiver is enforceable, HBO's motion to dismiss the class claims with prejudice is granted").

Accordingly, the Court's order compelling arbitration of Plaintiff's claims should specify that arbitration must proceed on an individual basis as dictated by the Terms of Use.

## III. The Court Should Stay All Proceedings Pending Arbitration

Based on the foregoing, Plaintiffs' claim is subject to arbitration and should be stayed for the duration of the arbitration. *Katz v. Cellco P'ship*, 794 F.3d 341, 345, (2d Cir. 2015) ("[The Second Circuit] join[s] those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested.").

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court order Plaintiff to submit his claims to individual binding arbitration and dismiss his class claims, or in the alternative, stay the litigation pending the conclusion of the arbitration process.

Dated: January 9, 2025

Respectfully submitted,

*/s/ David L. Yohai*

David L. Yohai
David R. Singh
Blake J. Steinberg
Zoe A. Buzinkai
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
david.yohai@weil.com
david.singh@weil.com
blake.steinberg@weil.com
zoe.buzinkai@weil.com

*Attorneys for Defendant Paramount Global*

**<u>Word Count Certification</u>**

Pursuant to Local Rule 7.1(c), I hereby certify that the total number of words in this memorandum, excluding the caption, table of contents, table of authorities, signature block, and word count certification is 4,365.

/s/ *David L. Yohai*
David L. Yohai