**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VICTOR CHO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PARAMOUNT GLOBAL,<br><br>Defendant. | Case No. 1:24-cv-08312-JPO |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT PARAMOUNT GLOBAL'S MOTION TO DISMISS THE COMPLAINT**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant Paramount Global*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

LEGAL STANDARD FOR MOTION TO DISMISS .......... 7

ARGUMENT .......... 8

I. Plaintiff Has Sued The Incorrect Defendant .......... 8

II. Plaintiff Lacks Standing under Rule 12(b)(1) for Meta Pixel-Related Claims .......... 9

A. No Meta Pixel-Related Transmissions Took Place During the Alleged Time Period .......... 9

III. Plaintiff's Theories of Disclosure Are Not Well Pled .......... 10

A. The TikTok Pixel Does Not Disclose PII Within the Meaning of the VPPA .......... 10

B. Plaintiff Has Not Plausibly Alleged that Paramount Knowingly Disclosed PII .......... 11

C. Paramount Met the VPPA's Requirements in Obtaining Plaintiff's Consent to the Alleged Disclosure .......... 16

IV. Plaintiff's Claims Are Barred By the Mandatory Arbitration Clause in the Terms of Use .......... 18

CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afua v. Mediterannean Shipping Co. (USA) Inc.*,
2022 WL 2181432 (E.D.N.Y. June 16, 2022) ....8

*Aldana v. GameStop, Inc.*,
2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) ....14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....7, 8

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015) ....8, 13, 14

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017) ....14

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l.*,
790 F.3d 411 (2d Cir. 2015) ....7

*Czarnionka v. Epoch Times Ass'n*,
2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ....14

*Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*,
2023 WL 5935694 (S.D.N.Y. Sept. 12, 2023) ....4

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....10, 13, 14

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) ....17

*Fernandez v. Zoni Language Ctrs., Inc.*,
2016 WL 2903274 (S.D.N.Y. May 18, 2016), *aff'd*, 858 F.3d 45 (2d Cir. 2017) ....4

*Ghanaat v. Numerade Labs*,
698 F. Supp. 3d 714 (N.D. Cal. 2023) ....12

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ....14

*Heerde v. Learfield Communications, LLC*,
2024 WL 3573874 (C.D. Cal. July 19, 2024) ....12

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ....................4, 11, 13, 14

*Int'l Audiotext Network, Inc. v. AT&T*,
62 F.3d 69 (2d Cir. 1995)....................3

*Levin v. Frank*,
803 F. App'x 562 (2d Cir. 2020) ....................10

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)....................11, 12

*Martinez v. D2C, LLC*,
2024 WL 4367406 (S.D. Fla. Oct. 1, 2024)....................15

*Moran v. GTL Constr., LLC*,
2007 WL 2142343 (S.D.N.Y. July 24, 2007) ....................10

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................10

*Optimus Commc'ns v. MPG Assocs., Inc.*,
841 F. Supp. 2d 722 (E.D.N.Y. 2012) ....................18

*Orozco v. Fresh Direct, LLC*,
2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016)....................3

*Reiss v. Fin. Performance Corp.*,
97 N.Y.2d 195 (2001) ....................18

*Ruffolo v. Oppenheimer & Co.*,
987 F.2d 129 (2d Cir. 1993)....................10

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ....................13

*Smith v. Trinity Broadcasting of Texas, Inc.*,
2024 WL 4394557 (C.D. Cal. Sept. 27, 2024) ....................12

*Solomon v. Flipps Media, Inc.*,
2023 WL 6390055, (E.D.N.Y. Sept. 30, 2023), *appeal filed*, No. 23-7597 (2d Cir. Nov. 1, 2023) ....................12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................7, 9

*Trs. of United Health & Welfare Fund v. Copper Servs., LLC*,
2024 WL 3553138 (S.D.N.Y. July 26, 2024) ....................10

*Warth v. Seldin*,
422 U.S. 490 (1975)....................................................................................................9

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022).......................................................................8, 13

*Yoder v. Ingersoll-Rand Co.*,
31 F. Supp. 2d 565 (N.D. Ohio 1997), *aff'd*, 172 F.3d 51 (6th Cir. 1998)........................14, 15

**Statutes**

Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq*. ...................................................1, 16, 17

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(1) ..................................................................7, 9, 10

Federal Rules of Civil Procedure Rule 12(b)(6) .......................................................................7, 18

Meta, *Cookies Policy*,
https://mbasic.facebook.com/privacy/policies/cookies/printable/; ..........................................4

Paramount, www.paramountplus.com ......................................................................3, 5, 17

Paramount, *Privacy Policy*,
https://privacy.paramount.com/en/policy?r=www.paramountplus.com.................7, 16, 17, 18

Paramount, *Terms of* Use, https://legal.paramount.com/us/en/pplus/terms-of-use?r=www.paramountplus.com .......................................................................6, 8, 18

TikTok, *About TikTok Pixel*, https://ads.tiktok.com/help/article/tiktok-pixel ..........................5, 11

TikTok, *Troubleshoot with Pixel Helper*,
https://ads.tiktok.com/help/article/tiktok-pixel-helper-2.0?lang=en..................................5, 11

Defendant Paramount Global ("Paramount") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Plaintiff has sued the wrong defendant, cannot establish Article III standing over the bulk of his allegations, and in general, has brought a complaint that is rife with deficiencies that require its dismissal. Plaintiff asserts a single claim under the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq*., which generally prohibits a "video tape service provider" from "knowingly disclos[ing]" the "personally identifiable information" ("PII") of its "consumer[s]." 18 U.S.C. § 2710(b)(1). He claims that the use of the Meta (f/k/a Facebook) Pixel and TikTok Pixel—technology that is widely used for advertising purposes—violated the VPPA by transmitting information about videos he watched on Paramount+. Plaintiff, however, has not and cannot state an actionable VPPA claim for several reasons:

*First*, despite agreeing that his allegations were properly directed to CBS Interactive Inc., not Paramount, Plaintiff failed to file an amended complaint by December 20 as agreed upon by the parties. The Court should therefore dismiss Plaintiff's claims, which are not properly directed against Paramount.

*Second*, Plaintiff lacks Article III standing to assert claims based on use of the Meta Pixel. Although he claims his video watching information was disclosed in the last two years, the Meta Pixel was removed from Paramount+ video pages over two years prior to the filing of the

---

[1] Paramount is also filing a motion to compel arbitration. In moving to dismiss, Paramount does not waive its right to arbitrate. *See Mahmoud Shaban & Sons Co. v. Mediterranean Shipping Co., S.A.*, 2013 U.S. Dist. LEXIS 135136, at *6 (S.D.N.Y. Sep. 20, 2013) (finding that "it is well established that" a "choice to file a motion to dismiss before moving to compel arbitration" does not waive the party's right to enforce the arbitration clause (citing *Rush v. Oppenheimer & Co.*, 779 F. 2d 885, 888 (2d Cir. 1985)).

Complaint. Moreover, Paramount's records show Plaintiff created his Paramount+ account long after the Meta Pixel was removed from video pages. Because Plaintiff therefore cannot demonstrate he watched videos on the Paramount+ website while the Meta Pixel was active on video pages, he lacks standing to bring claims based on disclosures occurring via the Meta Pixel.

*Third*, Plaintiff's remaining theories of disclosure unrelated to the Meta Pixel are not well pled and fail to state a claim to relief under the VPPA. Plaintiff's Complaint itself demonstrates that the TikTok Pixel does not disclose user identifying information. Moreover, Plaintiff has failed to plausibly allege that Paramount knowingly disclosed personally identifiable information ("PII") as defined in the VPPA, including because: (1) he fails to plausibly allege that the specific video titles he watched were disclosed, (2) he fails to plausibly allege that any disclosures contained information which actually identified him, (3) he fails to offer adequate allegations as to Paramount's knowledge of the alleged disclosures, and (4) he does not plead necessary technical conditions were present for the disclosure of PII. In addition, Plaintiff's VPPA claims are barred because Paramount obtained his consent to the exact activity about which he complains.

*Fourth*, Plaintiff's claims are barred under Paramount+'s Terms of Use, which he agreed to when subscribing to Paramount+. The Terms of Use contain mandatory dispute resolution procedures, with which Plaintiff has not complied. His claims should be dismissed for this reason as well.

## BACKGROUND

***The Parties.*** Plaintiff alleges that Paramount "owns and operates its online and mobile streaming applications, . . . including www.paramountplus.com." Compl. ¶ 1. Paramount+ is a subscription-based service that allows users to stream movies, television, and live sports and other

programming. *See, e.g.*, https://www.paramountplus.com/ (last visited Dec. 19, 2024).[2] To access content on Paramount+, individuals have to create an account. *Create an Account*, https://www.paramountplus.com/account/signup/createaccount (last visited Dec. 19, 2024).[3] Plaintiff alleges he "has had an account with Paramount which he has used to stream shows and movies from his computer on a regular basis within the last two years." Compl. ¶ 5. Plaintiff alleges that in subscribing to Paramount's services, "individuals must create an online account and share their identifying information." Compl. ¶ 13.

***The Alleged Disclosures of PII***. According to the Complaint, "[w]hen subscribers request or view videos on Defendant's Website and apps, their Personal Viewing Information is transmitted to Facebook, TikTok, and other unauthorized third parties as a result of the tracking tools that Defendant purposely installed and implemented on its Website and apps." Compl. ¶ 14. Plaintiff further alleges "Defendant controlled its Website, apps, and all of the tracking technologies that it used to transmit its subscribers' Personal Viewing Information to unauthorized parties." *Id*.

<u>Meta Pixel</u>. Specifically, Plaintiff alleges that Paramount "installed and used" the Meta Pixel, which then sent Meta "subscribers' granular Website and Apps activity, including the names

[2] The Court may consider materials from Defendant's website, because Plaintiff's claims are based on the website and incorporate the website by reference in the Complaint. Notably, Plaintiff states that CBSI "owns and operates its online and mobile streaming applications ('Apps'), including www.paramountplus.com (the 'Website')," Plaintiff "has had an account with Paramount," and when subscribing, "individuals must create an online account and share their identifying information." Compl. ¶¶ 1, 5, 13; *see Orozco v. Fresh Direct, LLC*, 2016 WL 5416510, at *5 (S.D.N.Y. Sept. 27, 2016) (assessing the "totality" of a website "incorporated by reference" into a complaint "at the center of Plaintiffs' allegations" in resolving a motion to dismiss); *Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

[3] The "Create an Account" URL will direct a user to two "Pick a Plan" options, and either plan will then direct the user to the "Create an Account" page.

of specific videos that subscribers requested and/or viewed." Compl. ¶ 19. However, the Meta Pixel was removed from Paramount+ website video pages on September 28, 2022, more than two years before the filing of the complaint. *See* Declaration of Maureen Saraf (Saraf Decl.) ¶ 14; Compl. ¶ 5. Indeed, Paramount's subscription records indicate that Plaintiff did not sign up for an account until August 2024—over a year after Paramount removed the Meta Pixel from all video pages on the Paramount+ website. Saraf Decl. ¶ 6.[4]

Relatedly, although Plaintiff alleges that he "has maintained and used his Facebook account from the same browser that he used to request and view Paramount video content" on the Paramount+ website, Compl. ¶ 5, the Complaint fails to allege that Plaintiff was *logged into his Facebook account* at the time he was streaming videos on Paramount+. The Meta Pixel only transmits user information to Meta while a user is logged in to Facebook and has not cleared his or her cookies. *See, e.g.*, Meta, *Cookies Policy* (Dec. 12, 2023), https://mbasic.facebook.com/privacy/policies/cookies/printable/; *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1094 (N.D. Cal. 2015) (explaining that the c_user cookie contains "the logged-in user's Facebook user ID expressed in a numeric format").[5]

<u>TikTok Pixel</u>. Plaintiff similarly alleges that Paramount "uses" the TikTok Pixel on its website and apps, which automatically provides TikTok with "user data." Compl. ¶¶ 24-25.

---

[4] "On a factual challenge, a defendant may "proffer[ ] evidence beyond the [p]leading," and, if the defendant's evidence " 'reveal[s] the existence of factual problems' in the assertion of jurisdiction[,]" then the plaintiff must "come forward with evidence of their own to controvert that presented by the defendant." . . . In such a case, "no presumptive truthfulness attaches to the complaint's jurisdictional allegation; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *See Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, 2023 WL 5935694, at *3 (S.D.N.Y. Sept. 12, 2023).

[5] *Fernandez v. Zoni Language Ctrs., Inc.*, 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016) ("Courts may . . . take judicial notice of information contained on websites where 'the authenticity of the site has not been questioned.'"), *aff'd*, 858 F.3d 45 (2d Cir. 2017).

Plaintiff claims that this user data "identifies subscribers based on their unique and persistent TikTok identifiers" and is sent to TikTok "alongside the title of the video content the specific subscriber requested or viewed." Compl. ¶ 25. However, the TikTok Pixel does not transmit information that would allow an ordinary person to identify a specific individual. The TikTok Pixel collects information to determine "the geographic location of an event" and "the device make, model, operating system, and browser information," but not any user information that an ordinary person could use to identify an individual. TikTok, *About TikTok Pixel* (Oct. 2024), https://ads.tiktok.com/help/article/tiktok-pixel.[6] Indeed, Figure 3 in the Complaint—which Plaintiff claims shows that Defendant sends "TikTok the exact user and the title of the video content they requested or viewed on the Website"—does not actually show any user-identifying information being transmitted by the TikTok Pixel. *See also* TikTok, *Troubleshoot with Pixel Helper* (May 2024), https://ads.tiktok.com/help/article/tiktok-pixel-helper-2.0?lang=en

***Plaintiff Assented to the Paramount+ Terms of Use and Privacy Policy***. Upon signing up for a Paramount+ account, individuals agree to the Terms of Use and acknowledge the Privacy Policy. *See Create an Account*, https://www.paramountplus.com/account/signup/createaccount (last visited Jan. 2, 2025). Indeed, individuals who create accounts encounter language that states "By pressing 'Continue', you confirm that you have read and agree to the Terms of Use and acknowledge our Privacy Policy." *Id*. The phrases "Terms of Use" and "Privacy Policy" are hyperlinks that appear in blue, distinguishing them from the surrounding grey text, and clicking on them leads individuals to the Terms of Use and Privacy Policy, which they can easily scroll

[6] The Court may consider the contents of the TikTok website because Plaintiff incorporated the website by reference in his Complaint. Compl. ¶ 24 (citing the "About TikTok" page of www.tiktok.com.).

through and read. *Id*.[7]

***Terms of Use***. The Paramount+ Terms of Use require taking certain steps to resolve disputes with Paramount if such disputes are not resolved after contacting customer service:

> Before a party commences an arbitration or files a small claims court action with respect to a Claim, the party must first send to the other a written notice of dispute ("Notice"). A Notice from you to us must (1) be sent by certified mail; (2) be addressed to: CBS Interactive Inc., 680 Folsom Street, San Francisco, CA 94107, Attn: Legal Department (the "Notice Address"); (3) contain your name, address, and email address; (4) describe the nature and basis of your Claim; (5) if you are submitting the Notice, include any relevant facts regarding your use of the Services, including without limitation whether you have created an account; (6) specify the nature and basis of the specific relief sought, including the damages sought, if any, and a detailed calculation of them; and (7) include a personally signed statement from you (and not your counsel) verifying the accuracy of the contents of the Notice. The Notice must be individualized, meaning it can concern only your dispute and no other person's dispute.

Terms of Use, § 1.1 (Jan. 24, 2023) https://legal.paramount.com/us/en/pplus/terms-of-use?r=www.paramountplus.com. The Terms also provide that "[a]fter receipt of a completed Notice, the parties shall engage in a good faith effort to resolve the dispute for a period of 60 days (which can be extended by agreement)." *Id*. Plaintiff here, however, has not pled that he made any effort to comply with this provision. Indeed, he has instead filed this lawsuit.

***Privacy Policy.*** The Paramount+ Privacy Policy provides that, "[w]e collect and receive personal information associated with you and your device automatically when you use certain Paramount Services . . . We collect and receive device IDs and other unique identifiers and online activity data using device-based tracking technologies such as cookies, pixels, tags, beacons, scripts, and similar technologies. On certain pages of the Paramount Services, we use third-party

[7] The sign-up process is also detailed in Paramount's Motion to Compel Arbitration, and is shown in Exhibit C to the Saraf Declaration.

tools to help us look at mouse movements, clicks, keystrokes, data or text entered, and the pages you visit." *Privacy Policy* (Apr. 15, 2024), https://privacy.paramount.com/en/policy?r=www.paramountplus.com. It further explains that "We may automatically receive certain information about you and your device using browser- or device-based tracking technologies . . . ." *Id.*

In addition, in a section clearly labelled "COOKIES AND OTHER TRACKING TECHNOLOGIES[,]" the Privacy Policy also explains that a user can "manage how these tracking technologies are used by adjusting [his or her] device or browser settings . . . ." *Id.* It further offers that "[i]n some cases, you can opt out of tracking by [Paramount's] analytics providers by visiting their opt-out pages directly," and includes a color-distinguished, underlined hyperlink to those pages. *Id.*

## LEGAL STANDARD FOR MOTION TO DISMISS

***Rule 12(b)(1)***. A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) "for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (citations omitted). To establish constitutional standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal citations omitted).

***Rule 12(b)(6)***. Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining a complaint's adequacy, a court must disregard conclusory

allegations and legal conclusions, which are not entitled to the assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff has a plausible—as opposed to merely conceivable—claim for relief. *Id.* at 679. In VPPA actions, this District has recognized that plaintiffs' allegations must "raise a right of relief above the speculative level." *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 665 (S.D.N.Y. 2015); *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 88 (S.D.N.Y. 2022).

## ARGUMENT

### I. Plaintiff Has Sued The Incorrect Defendant

Plaintiff names Paramount Global as the Defendant based on its alleged operation of paramountplus.com. Compl. ¶ 1. Paramount Global, however, is not the correct defendant. Indeed, as indicated in the Paramount+ Terms of Use, CBS Interactive Inc. is the proper defendant here: "Welcome to the network of interactive and premium content services provided by CBS Interactive Inc., its affiliates or its subsidiaries[.]" Terms of Use, *Preamble*, https://legal.paramount.com/us/en/pplus/terms-of-use?r=www.paramountplus.com.[8] Indeed, Plaintiff agreed that this was the case, as noted in Defendant's submission to the Court on November 26, 2024. ECF No. 7 ("The parties have conferred and agree that Plaintiff's allegations are properly directed to CBS Interactive Inc. instead of Paramount Global, and that CBS Interactive Inc. should be substituted as the defendant in place and instead of Paramount Global . . . Plaintiff intends to file an amended complaint solely to name CBS Interactive Inc. as defendant by December 20, 2024[.]"). Plaintiff, however, never filed an amended complaint as he agreed, and the Court should therefore dismiss Plaintiff's claim. *See Afua v. Mediterannean Shipping Co.*

[8] As noted, the Terms of Use also apply to CBS Interactive's affiliates, so the Terms of Use—including the arbitration clause—are applicable here regardless of whether Paramount or CBS Interactive is named as the defendant.

*(USA) Inc.*, 2022 WL 2181432 (E.D.N.Y. June 16, 2022) (finding that defendant had made a "meritorious argument" that plaintiff had sued the incorrect entity, and granting motion to stay discovery pending resolution of defendant's motion to dismiss asserting this argument).

## II. Plaintiff Lacks Standing under Rule 12(b)(1) for Meta Pixel-Related Claims

### A. No Meta Pixel-Related Transmissions Took Place During the Alleged Time Period

Article III standing is a "threshold question in every federal case, determining the power of the court to entertain the suit," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), and with regard to the Meta Pixel claims, Plaintiff does not meet that threshold here. Plaintiff alleges that Paramount violated the VPPA by allegedly knowingly disclosing to Meta information about its users' video watching activity via the installation of the Meta Pixel on Paramount+. Compl. ¶ 1. Although Plaintiff claims he watched videos on the Paramount+ website in the last two years, and that his video watching information was therefore disclosed by the Meta Pixel, the Meta Pixel was removed from Paramount+ video pages on September 28, 2022, over two years prior to the complaint's filing. Saraf Decl. ¶ 14. Moreover, notwithstanding his allegation, Paramount's records show that Plaintiff signed up for his Paramount+ in August 2024, well after the Pixel was removed from video pages. *Id.* ¶ 6. Information about what videos Plaintiff watched therefore was not disclosed by the Meta Pixel, and he therefore suffered no concrete harm caused by its use. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021).

This deficiency is fatal to plaintiff's claim based on the Meta Pixel because it cannot be remedied by any amendment. Plaintiff cannot provide evidence showing that the Meta Pixel was enabled on the video pages during the last two years, nor can he provide evidence showing that he subscribed to Paramount+ and watched videos on the website while the Meta Pixel was active on video pages. Saraf Decl. ¶ 16. As a result, the Court should also not grant Plaintiff leave to amend

to add such claims. *See, e.g.*, *Levin v. Frank*, 803 F. App'x 562, 563 (2d Cir. 2020); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Therefore, Plaintiff lacks standing to bring claims based on the Meta Pixel, and his claim should be dismissed to the extent it is predicated on disclosures occurring via the Meta Pixel. *See Trs. of United Health & Welfare Fund v. Copper Servs., LLC*, 2024 WL 3553138, at *3 (S.D.N.Y. July 26, 2024) (dismissing part of claim for lack of subject matter jurisdiction under Rule 12(b)(1) where plaintiff sought recovery of benefit contribution payments for a time period after the applicable collective bargaining agreement expired); *see also Moran v. GTL Constr., LLC*, 2007 WL 2142343, at *5 (S.D.N.Y. July 24, 2007) (granting motion to dismiss any part of plaintiff's claim accruing prior to the date the statute of limitations began to run).[9]

## III. <u>Plaintiff's Theories of Disclosure Are Not Well Pled</u>

### A. The TikTok Pixel Does Not Disclose PII Within the Meaning of the VPPA

Plaintiff's allegations regarding the TikTok Pixel are deficient because Plaintiff simply claims that his "user data" and "unique and persistent TikTok identifiers," are sent to TikTok along with "the title of the video content the specific subscriber requested or viewed." Compl. ¶ 25. That is not a plausible allegation that an "ordinary person" could use said unspecified "user data" to "identify a specific individual's video-watching behavior," as required for a VPPA claim. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017); *see also see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 283 (3d Cir. 2016) ("To an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person.").

[9] Plaintiff's Meta Conversions API claim fails as well, because as Plaintiff acknowledges in a footnote, installation of the Meta Pixel is required for the operation of the Conversions API. Compl. ¶ 14 n.1 ("[T]he Facebook Pixel works in conjunction with its Conversion API tool.").

Indeed, the TikTok Pixel does not transmit information that would allow an ordinary person to identify a specific individual. The TikTok Pixel collects information to determine "the geographic location of an event" and "the device make, model, operating system, and browser information," but not any user information that an ordinary person could use to identify an individual. TikTok, *About TikTok Pixel*, https://ads.tiktok.com/help/article/tiktok-pixel.[10] This is further confirmed by Figure 3 in the Complaint, which does not show any user-identifying information being transmitted by the TikTok Pixel. *See also* TikTok, *Troubleshoot with Pixel Helper*, https://ads.tiktok.com/help/article/tiktok-pixel-helper-2.0?lang=en.

**B. Plaintiff Has Not Plausibly Alleged that Paramount Knowingly Disclosed PII**

Plaintiff has also failed to state an actionable VPPA claim as to both the TikTok Pixel and Meta Pixel because Plaintiff fails to allege any facts making it plausible that Paramount knowingly disclosed information constituting PII within the meaning of the VPPA. *See Hulu Privacy Litig.*, 86 F. Supp. 3d, at 1095 ("For there to be an actionable VPPA violation, the video provider must have knowingly disclosed . . . three distinct elements []: the consumer's identity; the video material's identity; and the connection between them.").

***1. No Disclosure of Specific Video Titles by Paramount***

Indeed, with regard to the alleged transmission of video watching information, Plaintiff has not adequately alleged that an ordinary person could identify the video content that an individual watched. Plaintiff fails to allege "essential information for a VPPA claim, including . . . whether there are multiple videos on the page and, if so, which 'specific video materials' were requested or obtained by the website visitor[.]" *See Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023). Indeed, Figures 2 and 3 in Plaintiff's Complaint purport to show "personal

[10] The Court may consider the contents of the TikTok website because Plaintiff incorporated the website by reference in his Complaint. *See* Compl. ¶ 24.

viewing information" that Plaintiff claims was transmitted, yet the Paramount+ landing page displayed in these Figures shows at least five videos embedded and the Complaint contains no allegation as to the video content that was requested or viewed on these pages. Compl. Figure 2, Figure 3; *see also Martin*, 657 F. Supp. 3d at 285 ("Simply sending a URL of a People.com webpage which may or may not include a video does not show that a person requested or obtained specific video materials or services.").

***2. No Disclosure of Plaintiff's Identity by Paramount***

In addition, Plaintiff has failed to plausibly allege that any information transmitted actually identified *him*. Various courts analyzing similar issues, including in the Second Circuit, have found the transmission of a Facebook ID must lead to a public Facebook profile that contains identifying information. In *Solomon v. Flipps Media, Inc.*, the court dismissed Plaintiff's VPPA claim on this basis, explaining that "Plaintiff needed to allege that her public Facebook profile page contained identifying information about her in order to state a plausible claim. As her complaint says nothing about any personal information on her public Facebook profile page, her VPPA claim fails." 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023), *appeal filed*, No. 23-7597 (2d Cir. Nov. 1, 2023); *see also Ghanaat v. Numerade Labs*, 698 F. Supp. 3d 714, 720 (N.D. Cal. 2023) (disclosure of a Facebook ID is not PII unless "it leads to a Facebook page that discloses personal and identifying information about the consumer."); *Smith v. Trinity Broadcasting of Texas, Inc.*, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024) (dismissing VPPA claim because the plaintiff did not "indicate that her profile [was] public and contain[ed] any identifying information or photos."); *Heerde v. Learfield Communications, LLC*, 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (dismissing a VPPA claim because the plaintiffs did not "identify what

information on their Facebook pages, if any, was viewable and could be used to identify them.").[11] Here, however, Plaintiff does not allege that his public profile contains any of his personal and identifying information, and as a result, he has not adequately pled that his identity was disclosed here.

Indeed, personally identifiable information "means only that information that would 'readily permit an *ordinary person* to identify a specific individual's video-watching behavior.'" *Eichenberger*, 876 F.3d, at 985 (emphasis added); *Wilson*, 598 F. Supp. 3d, at 91-92 (adopting the ordinary person test and explaining that interpreting PII to be "recipient-dependent" "would make little sense" because the VPPA's prohibition on disclosures of PII applies broadly, not just where information is disclosed to a particular third party.). Plaintiff, however, has not adequately alleged how any information transmitted here could be used by an ordinary person to identify a specific user.

Moreover, even if any information had been disclosed by the Meta Pixel, it was not disclosed by Paramount. It is Meta who places cookies on an individual's browser and receives information from them. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 948 (N.D. Cal. 2017) ("Facebook puts cookies on visitors' computers. It uses these cookies to store information about each visitor—for instance, the 'c_user' cookie is a unique identifier"), *aff'd*, 745 F. App'x 8 (9th Cir. 2018); *Hulu*, 2014 WL 2758598, at *5 ("Facebook sets the c_user cookie."). To the extent the cookie was transmitted at all, Meta transmitted it to itself. *See Hulu*, 86 F. Supp. 3d, at 1093 n.3 ("[A website] can read only [its own] cookies, while Facebook can read only facebook.com cookies."); *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 664 (S.D.N.Y. 2015)

[11] *Collins v. Pearson Education, Inc.* is inapposite because it failed to consider whether the complaint at issue sufficiently alleged the plaintiff's public Facebook page contained information that identified him. *See* 721 F. Supp. 3d 274, 287 (S.D.N.Y. 2024).

("In particular, through its 'c_user' cookie, Facebook's code allegedly forces a user's web browser to look for the user's Facebook ID."); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015) (communications through browser internet cookies were between the user and the defendants).

### *3. Insufficient Allegations As to Paramount's Knowledge*

Plaintiff more generally has not alleged facts making it plausible that any disclosure was made "knowingly," because this requires the defendant to have known that the technologies at issue transmitted the alleged PII to the third party, and that the third party could use that information to match a user to their PII. *Hulu*, 86 F. Supp. 3d, at 1096. Here, Plaintiff does not plausibly allege that Paramount knew how Meta or TikTok would use the information that the technologies sent. *E.g.*, Compl. ¶ 16. Importantly, defendant's mere knowing implementation of a technology, by itself, does not satisfy this requirement. *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017) ("If Barnes & Noble did not think it was conveying PII, then there could be no knowledge of the conveyance, regardless of whether it knew what Facebook might do with the information."), *adopted*, 2017 WL 3726050 (S.D.N.Y. Aug. 28, 2017).[12]

Furthermore, Plaintiff does not allege that Paramount knew or could access Plaintiff's identifying information, so Paramount cannot be charged with disclosing such information. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) (rejecting VPPA claim where the defendant "never disclosed and apparently never even possessed" the information that would allow a third party to identify an individual); *Yoder v. Ingersoll-Rand Co.,* 31 F. Supp. 2d 565, 571 (N.D.

[12] Meta Pixel cases such as *Czarnionka v. Epoch Times Ass'n*, 2022 WL 17069810, (S.D.N.Y. Nov. 17, 2022) and *Aldana v. GameStop, Inc.*, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) do not establish otherwise, as the courts there did not dispute that the c_user cookie is Meta's cookie, or that Meta deposits the cookie on users' browsers.

Ohio 1997) ("It is a logical impossibility for a party intentionally to disclose information that it does not know it has."), *aff'd*, 172 F.3d 51 (6th Cir. 1998).

#### *4. Failure to Allege Necessary Conditions for Disclosure*

Plaintiff has also failed to plausibly allege any details concerning whether various necessary conditions were in place for the transmission of his information—including that he did not block or clear cookies or use ad blockers, and that he was logged in to Facebook, for example. Indeed, in a recent decision denying the plaintiffs' motion for class certification, a federal district court explained "in order for the Pixel to have transmitted the relevant information to Meta, several conditions must have been met. To summarize[], in addition to viewing or selecting the prerecorded video through Univision's website, the subscriber must have also: (1) had a Facebook account at the time the video was selected; (2) used a web browser that didn't block the Pixel by default; (3) been simultaneously logged into the subscriber's own Facebook account while selecting the video; (4) been simultaneously logged into Facebook on the same device that the subscriber used to select the video; (5) been simultaneously logged into Facebook using the same browser through which the subscriber selected the video; and (6) not deployed any number of browser settings or add-on software that would have blocked the Pixel." *See Martinez v. D2C, LLC*, 2024 WL 4367406, at *7-8 (S.D. Fla. Oct. 1, 2024). Here, Plaintiff has failed to plausibly allege these conditions were in place as required to support his claim that his PII was transmitted.

Plaintiff has therefore failed to plausible alleged that Paramount knowingly disclosed PII as required under the VPPA.[13]

[13] Plaintiff's brief mention that Paramount discloses individuals' viewing information to Google and Twitter is also deficient, given Plaintiff offers no supporting allegations articulating how these disclosures occur. Compl. ¶¶ 14, 31.

### C. Paramount Met the VPPA's Requirements in Obtaining Plaintiff's Consent to the Alleged Disclosure

Plaintiff further fails to state a claim because Paramount obtained Plaintiff's consent to the alleged disclosure as provided for in the VPPA. The VPPA permits disclosure of PII when there is informed, written consent (1) "in a form distinct and separate from any form setting forth other legal or financial obligations;" (2) consent is given "at the time the disclosure is sought;" and (3) the video tape service provider clearly and conspicuously allows visitors to opt out of information sharing. 18 U.S.C. § 2710(b)(2)(B).

All three criteria are met here. First, Paramount has a "distinct and separate" Privacy Policy that users agree to when they create accounts. 18 U.S.C. § 2710(b)(2)(B). While Paramount's Terms of Use address a range of topics, the Privacy Policy concerns only the collection and sharing of personal information. *See* Privacy Policy, https://privacy.paramount.com/en/policy?r=www.paramountplus.com.[14] Paramount notified individuals of the exact type of disclosure at the focus of the Complaint by clearly informing the user "[w]e collect and receive personal information associated with you and your device automatically when you use certain Paramount Services . . . We collect and receive device IDs and other unique identifiers and online activity data using device-based tracking technologies such as cookies, pixels, tags, beacons, scripts, and similar technologies. On certain pages of the Paramount Services, we use third-party tools to help us look at mouse movements, clicks, keystrokes, data or text entered, and the pages you visit." *Id.* It further explained that "[w]e may automatically receive certain information about you and your device using browser- or device-based tracking

[14] As shown on the Paramount+ website and discussed in Paramount's Motion to Compel Arbitration, Plaintiff was required to acknowledge the current version of the Privacy Policy when he created his Paramount+ account. *See Create an Account*, https://www.paramountplus.com/account/signup/createaccount.

technologies . . . ." *Id.*

Second, consent to the Privacy Policy is obtained at the time that the user creates an account on the Paramount+ website. *See Create an Account*, https://www.paramountplus.com/account/signup/createaccount. The Privacy Policy has also been posted on the website at all relevant times. Because visitors encountered the Privacy Policy when they visited the website, *i.e.*, when Plaintiff alleges Paramount disclosed PII via the Meta and/or TikTok Pixel, consent was "given at the time the disclosure [was] sought." 18 U.S.C. § 2710(b)(2)(B). Paramount+'s approach comports with industry practice as to how websites display and obtain consent to privacy policies—practices Congress was surely aware of when it amended the VPPA in 2012 to allow "consumers greater flexibility to share their video viewing preferences." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1253 (11th Cir. 2015).

Third, the Privacy Policy clearly and conspicuously provides users with instructions on how to opt out of targeted advertising through the use of the technologies at issue in the Complaint. 18 U.S.C. § 2710(b)(2)(B). In sections clearly labelled "COOKIES AND OTHER TRACKING TECHNOLOGIES" and "MANAGING COOKIES AND OTHER TRACKING TECHNOLOGIES[,]" the Privacy Policy also explains that a user can "manage how these tracking technologies are used by adjusting [his or her] device or browser settings . . . ." *Privacy Policy*, https://privacy.paramount.com/en/policy?r=www.paramountplus.com. It further offers that "[i]n some cases, you can opt out of tracking by [Paramount's] analytics providers by visiting their opt-out pages directly," and includes a color-distinguished, underlined hyperlink to those pages. *Id.* The Policy explains that "[a]lthough most browsers and devices accept cookies by default, their settings usually allow you to clear and decline cookies[,]" and provides links to "the cookie opt-out pages of common web browsers[,]" including Google Chrome, Apple Safari, Mozilla Firefox,

and Microsoft Internet Explorer. *Id*. It further offers links where individuals can opt out of tracking by analytics providers, including Google Analytics, and links to advertising self-regulatory organizations' websites where individuals can opt out of interest-based advertising. *Id*.

Plaintiff therefore consented to the exact disclosure he alleges violated the VPPA, barring his claims.

## IV. Plaintiff's Claims Are Barred By the Mandatory Arbitration Clause in the Terms of Use

In addition, Plaintiff further violated the Paramount+ Terms of Use by failing to pursue mandatory arbitration. *See Terms of Use*, § 1.1, https://legal.paramount.com/us/en/pplus/terms-of-use?r=www.paramountplus.com; *see also* Paramount's Motion to Compel Arbitration. The Court should require the Plaintiff to follow the mandatory dispute resolution procedures before he is able to proceed with any case in court. *Optimus Commc'ns v. MPG Assocs.*, Inc., 841 F. Supp. 2d 722, 724-25 (E.D.N.Y. 2012) (granting Rule 12(b)(6) motion to dismiss the complaint based on plaintiff's failure to comply with provision requiring mediation and arbitration of disputes). Indeed, "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 198 (2001). Because Plaintiff failed to comply with the mandatory dispute resolution procedures, his claim should be dismissed.

## CONCLUSION

For all the foregoing reasons, Paramount respectfully requests that the Court dismiss the Complaint in its entirety.

Dated: January 9, 2025

Respectfully submitted,

*/s/ David L. Yohai*

David L. Yohai
David R. Singh
Blake J. Steinberg
Zoe A. Buzinkai
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-800
Facsimile: (212) 310-8007
david.yohai@weil.com
david.singh@weil.com
blake.steinberg@weil.com
zoe.buzinkai@weil.com

*Attorneys for Defendant Paramount Global*

**Word Count Certification**

Pursuant to Local Rule 7.1(c), I hereby certify that the total number of words in this memorandum, excluding the caption, table of contents, table of authorities, signature block, and word count certification is 5,046.

/s/ *David L. Yohai*
David L. Yohai