# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTOR CHO, GIOVANNI STEWART, AND DAVID L'ABBE, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>CBS INTERACTIVE INC.,<br><br>　　　　　　　　Defendant. | Case No. 1:24-cv-08312-JPO |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CBS INTERACTIVE INC.'S MOTION TO COMPEL ARBITRATION, DISMISS THE CLASS CLAIMS, AND <u>STAY THE CASE IN LIGHT OF THE FIRST AMENDED COMPLAINT</u>

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant CBS Interactive Inc.*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

      A.    Plaintiffs Agreed to CBSI's Terms and Arbitration Provision When Creating Their Paramount+ Accounts .................................................. 2

          *1.*    *Plaintiff Victor Cho* ............................................................ 2

          *2.*    *Plaintiff David L'Abbe* ...................................................... 3

          *3.*    *Plaintiff Giovanni Stewart* ................................................. 3

      B.    The Paramount+ Terms of Use Include an Arbitration Agreement and Class Waiver ........................................................................................ 5

ARGUMENT ..................................................................................................................... 6

I.     The Court Should Compel Arbitration of Plaintiffs' Claims ................................ 6

      A.    The Arbitration Agreement Is Governed by the Federal Arbitration Act .............. 6

      B.    The Arbitration Agreement is Valid and Should be Enforced .............................. 7

          1.    Plaintiffs Entered into a Valid Arbitration Agreement ............................ 7

          2.    The Arbitration Agreement is Not Unconscionable ................................ 13

          3.    Plaintiffs' Claims Fall within the Scope of the Arbitration Clause ......... 16

          4.    Plaintiffs Refused to Arbitrate as Required ........................................... 17

II.    The Court Should Dismiss the Putative Class Claims and Compel Plaintiffs to Proceed on an Individual Basis ........................................................................ 18

III.   The Court Should Stay All Individual Proceedings Pending Arbitration ........................ 18

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)....................................................................................................18

*Aminoff & Co. LLC v. Parcel Pro, Inc.*,
    2022 WL 987665 (S.D.N.Y. Apr. 1, 2022)...............................................................10

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)..................................................................................6, 13, 14, 18

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
    2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017) *adopted by*, 2018 WL 671258
    (S.D.N.Y. Jan. 31, 2018)..............................................................................................9

*Biggs v. Midland Credit Mgmt., Inc.*,
    2018 WL 1225539 (E.D.N.Y. Mar. 9, 2018) ............................................................18

*Boustead Sec., LLC v. Leaping Grp. Co.*,
    656 F. Supp. 3d 447 (S.D.N.Y. 2023)..........................................................................1

*Brooks v. WarnerMedia Direct, LLC*,
    2024 WL 3330305 (S.D.N.Y. July 8, 2024) .......................................................15, 16

*Camilo v. Lyft, Inc.*,
    384 F. Supp. 3d 435 (S.D.N.Y. 2019)..........................................................................7

*Capstone Logistics Holdings, Inc. v. Navarrete*,
    2018 U.S. Dist. LEXIS 216940 (S.D.N.Y. Oct. 25, 2018), *aff'd & remanded*,
    796 F. App'x 55 (2d Cir. 2020) ...................................................................................8

*Carr v. Credit One Bank*,
    2015 WL 9077314 (S.D.N.Y. Dec. 16, 2015) .........................................................14

*Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*,
    967 F. Supp. 2d 756 (S.D.N.Y. 2013).........................................................................7

*Chestnut v. Whitehaven Income Fund I, LLC*,
    2014 WL 5388562 (S.D.N.Y. Oct. 23, 2014) .........................................................17

*Citigroup Inc. v. Sayeg Sead*e,
    2022 WL 179203 (S.D.N.Y. Jan. 20, 2022) .........................................................7, 17

*Coinbase, Inc. v. Bielski*,
    599 U.S. 736 (2023)..................................................................................................18

*Curtis v. JPMorgan Chase Bank, N.A.*,
  2024 WL 283474 (S.D.N.Y. Jan. 25, 2024) ........................................................8

*Daly v. Citigroup Inc.*,
  939 F.3d 415 (2d Cir. 2019) ...........................................................................16

*Feld v. Postmates, Inc.*,
  442 F. Supp. 3d 825 (S.D.N.Y. 2020) ..........................................................8, 10

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) ..........................................................................................7

*Flores v. Chime Fin., Inc.*,
  2022 WL 873252 (S.D.N.Y. Mar. 23, 2022) ...................................................14

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012) .............................................................10

*Garcia v. Nabfly, Inc.*,
  2024 WL 1795395 (S.D.N.Y. Apr. 24, 2024) ...................................................9

*Heckman v. Live Nation Entertainment, Inc.*,
  120 F.4th 670 (9th Cir. 2024) .........................................................................15

*Holick v. Cellular Sales of N.Y., LLC*,
  802 F.3d 391 (2d Cir. 2015) .......................................................................7, 17

*Horton v. Dow Jones & Co., Inc.*,
  2019 WL 952314 (S.D.N.Y. Feb. 27, 2019), *aff'd*, 804 F. App'x 81 (2d Cir.
  2020) ...............................................................................................................18

*Hu v. Whaleco, Inc.*,
  2024 WL 4481439 (E.D.N.Y. Oct. 1, 2024) ..........................................9, 15, 16

*Isaacs v. OCE Bus. Servs., Inc.*,
  968 F. Supp. 2d 564 (S.D.N.Y. 2013) .............................................................14

*Katz v. Cellco P'ship*,
  794 F.3d 341 (2d Cir. 2015) ...........................................................................19

*Klos v. Polskie Linie Lotnicze*,
  133 F.3d 164 (2d Cir. 1997) ...........................................................................14

*KPMG LLP v. Cocchi*,
  565 U.S. 18 (2011) ............................................................................................6

*Lamps Plus, Inc. v. Varela*,
  587 U.S. 176 (2019) ..........................................................................................6

*Lewis v. Samsung Elecs. Am., Inc.*,
  2023 WL 7623670 (S.D.N.Y. Nov. 14, 2023) .........................................................................13

*McDaniel v. Home Box Off., Inc.*,
  2023 WL 1069849 (S.D.N.Y. Jan. 27, 2023) ..........................................................................18

*McDougall v. Samsung Elecs. Am., Inc.*,
  2023 WL 6445838 (S.D.N.Y. Oct. 3, 2023) ............................................................................13

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)......................................................................................................9

*Ministers & Missionaries Benefit Bd. v. Snow*,
  26 N.Y.3d 466 (2015) .............................................................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)...........................................................................................................6, 7, 17

*New York v. Oneida Indian Nation*,
  90 F.3d 58 (2d Cir. 1996)......................................................................................................16

*Nicholas v. Wayfair Inc.*,
  410 F. Supp. 3d 448 (E.D.N.Y. 2019) ..................................................................................15

*Olsen v. Charter Commc'ns, Inc.*,
  2019 WL 3779190 (S.D.N.Y. Aug. 9, 2019) ........................................................................11

*Peiran Zheng v. Live Auctioneers LLC*,
  2021 WL 2043562 (S.D.N.Y. May 21, 2021) ..................................................................8, 10

*Pincaro v. Glassdoor, Inc.*,
  2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017).......................................................7, 8, 10, 11

*Ragone v. Atl. Video at Manhattan Ctr.*,
  2008 WL 4058480 (S.D.N.Y. Aug. 29, 2008), *aff'd*, 595 F.3d 115 (2d Cir.
  2010) .....................................................................................................................................16

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010)................................................................................................................13

*Sacchi v. Verizon Online LLC*,
  2015 WL 765940 (S.D.N.Y. Feb. 23, 2015)..........................................................................11

*Sadlock v. Walt Disney Co.*,
  2023 WL 4869245 (N.D. Cal. July 31, 2023)........................................................................11

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012)......................................................................................7, 12, 13

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ........................................................................................19

*Starkey v. G Adventures, Inc.*,
796 F.3d 193 (2d Cir. 2015)............................................................................11

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
592 F.3d 329 (2d Cir. 2010)............................................................................16

*Tsadilas v. Providian Nat'l Bank*,
786 N.Y.S.2d 478 (App. Div. 2004) ................................................................18

*Valle v. ATM Nat'l, LLC*,
2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ...................................................13

*Wu v. Uber Techs., Inc.*,
2024 WL 4874383 (N.Y. Nov. 25, 2024) ........................................................10

*Zaltz v. JDATE*,
952 F. Supp. 2d 439 (E.D.N.Y. 2013) ...............................................................9

*Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*,
736 F. App'x 274 (2d Cir. 2018) .....................................................................14

*Zambrana v. Pressler & Pressler, LLP*,
2016 WL 7046820 (S.D.N.Y. Dec. 2, 2016) ...............................................7, 17

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ......................................................... *passim*

Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.* ...............................................................1

California Invasion of Privacy Act, Cal. Pen. Code § 630 *et seq.* ...................................1

Video Privacy Protection Act, 18 U.S.C. § 2710 et seq. ..................................................1

**Other Authorities**

NAM, *Comprehensive Dispute Resolution Rules & Procedures*,
https://www.namadr.com/content/uploads/2024/10/Comprehensive-Rules-as-
of-10.1.2024.pdf...............................................................................................15

In light of the First Amended Complaint ("FAC"), Defendant CBS Interactive Inc. ("CBSI") respectfully moves to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), dismiss Plaintiffs' putative class claims,[1] and to stay this proceeding under Section 3 of the FAA, until the arbitrator enters a final award.

## INTRODUCTION

Under well-settled law, this case belongs in arbitration. Plaintiffs Victor Cho, David L'Abbe and Giovanni Stewart allege that CBSI has violated the Video Privacy Protection Act, 18 U.S.C. § 2710 et seq. (the "VPPA"), the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.* (the "Wiretap Act"), the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 630 *et seq.*, and the California tort of intrusion upon seclusion, through its use of the Meta Pixel, TikTok Pixel, and Taboola on the Paramount+ streaming service.  FAC ¶ 1, 95.  This dispute, however, does not belong in this Court.  Plaintiffs each agreed to the Paramount+ Terms of Use (the "Paramount+ Terms"), which include a mandatory arbitration agreement regarding all disputes or claims related to CBSI's services, including Paramount+.  Second Declaration of Maureen Saraf ("Second Saraf Decl.") ¶ 21, Ex. C § 1.  Not only that, but the Terms also contain a class action waiver requiring Plaintiffs to bring their claims on an individualized basis.  *Id.*  Yet in plain disregard of both the arbitration requirement and class waiver, Plaintiffs filed this putative class action.  *Id.*

The Federal Arbitration Act and binding Supreme Court and Second Circuit precedent require arbitration of Plaintiffs' claims.  These claims relate to the Paramount+ service and fall squarely within the Arbitration Agreement, which is valid and enforceable.  Plaintiffs' claims also lack merit, and CBSI will prove so in arbitration.  But Plaintiffs cannot disregard the parties'

---

[1] CBSI is also filing a motion to dismiss.  In doing so, CBSI does not waive its right to arbitrate.  *Boustead Sec., LLC v. Leaping Grp. Co.*, 656 F. Supp. 3d 447, 453 (S.D.N.Y. 2023) ("Courts have long concluded that such pre-answer motion practice [like a motion to dismiss] does not constitute the sort of significant litigation that weighs in favor of finding that there has been a waiver of an arbitration agreement").

agreement to engage in a streamlined and cost-efficient arbitration process designed to resolve these claims expeditiously.  Accordingly, as explained further below, this Court should (i) compel Plaintiffs to arbitrate their claims on an individual basis, (ii) dismiss the putative class claims, and (iii) stay the case pending resolution of Plaintiffs' individual claims in arbitration.

## BACKGROUND

### A.    Plaintiffs Agreed to CBSI's Terms and Arbitration Provision When Creating Their Paramount+ Accounts

Paramount+ is a paid video streaming service providing users with Paramount-branded entertainment and media content.  *See* Second Saraf Decl. ¶ 3.  When creating their Paramount+ accounts, Plaintiffs all agreed to the Paramount+ Terms and arbitration clause.

### 1.    *Plaintiff Victor Cho*

CBSI's records indicate that Plaintiff Cho created a Paramount+ account on August 21, 2024 through his Charter Communications Spectrum Cable Subscription ("Spectrum subscription").  *See* Second Saraf Decl. ¶ 4.  To complete the sign-up process, Plaintiff had to visit paramountplus.com to create a Paramount+ account.  *Id.* ¶¶ 7-9, Ex. B.  After being directed to the paramountplus.com account creation page, the Paramount+ website prompted Plaintiff Cho to enter his name, email, zip code, password, birthdate, and gender.  *Id.* ¶ 8, Ex. B.  Next, the website displayed language stating, "[b]y pressing 'Continue', you confirm that you have read and agree to the Terms of Use and acknowledge our Privacy Policy."  *Id.*  The phrases "Terms of Use" and "Privacy Policy" were hyperlinks that appeared in blue, contrasting the surrounding gray text, and clicking on these hyperlinks directed Plaintiff to the Paramount+ Terms and Privacy Policy, respectively.  *Id.* ¶ 8.  Plaintiff was then able to easily scroll through and read the Paramount+ Terms and Privacy Policy.  *Id.*  The Terms on CBSI's website when Plaintiff Cho created his account were effective as of January 24, 2023.  Second Saraf Decl. ¶ 10, Ex. C.  These same Terms

are still effective as of February 14, 2025, the date this motion was filed. *Id.* To finish creating an account, Plaintiff confirmed his assent to the Terms by clicking the "CONTINUE" button directly below the language confirming he agreed to the Terms. *Id.* ¶ 9.

### 2. Plaintiff David L'Abbe

CBSI's records indicate that Plaintiff L'Abbe created a Paramount+ account on August 9, 2023 through his Walmart+ Subscription. *Id.* ¶ 11. Plaintiff initiated the sign-up process on walmart.com before being redirected to paramountplus.com to create his Paramount+ account. Second Saraf Decl. ¶¶ 12-14, Ex. E. There, like Plaintiff Cho, he encountered language informing him that "[b]y pressing 'Agree & Continue', you confirm that you have read and agree to the Terms of Use and acknowledge our Privacy Policy." *Id.* The phrases "Terms of Use" and "Privacy Policy" were hyperlinks that appeared in blue, contrasting the surrounding gray text, and clicking on these hyperlinks directed Plaintiff to the Paramount+ Terms and Privacy Policy, which he could easily scroll through and read. *Id.* To finish creating his account, Plaintiff confirmed his assent to the Terms by clicking the "AGREE & CONTINUE" button directly below the language confirming he agreed to the Terms. *Id.* ¶ 14.

### 3. Plaintiff Giovanni Stewart

CBSI's records show Plaintiff Stewart initially subscribed to CBS All Access—the predecessor service to Paramount+—in March 2015, at which time website users were required to agree to the CBS All Access Terms of Use. Second Saraf Decl. ¶¶ 16-18, Exs. F, G, H. Indeed, above a sign-up button, the website displayed language stating: "[b]y registering you become a member of the CBS Interactive family of sites and you have read and agree to the <u>Terms of Use</u> . . . ." *Id.* ¶ 17, Ex. G. The phrase "Terms of Use" was a hyperlink that was underlined and appeared in blue, distinguishing it from the surrounding text, and clicking on it led individuals to the CBS All Access Terms of Use, which they could easily scroll through and read. *Id.* ¶ 18, Ex.

G.  The CBS All Access Terms required arbitration of any disputes or claims "arising out of or relating to the Services[,]" and provided that CBSI "may change these Terms in the future" and that "[i]f you continue to use the Services after we change these Terms, you accept all changes." *Id.* ¶¶ 1, 17, Ex. H.

After his initial CBS All Access subscription, Plaintiff Stewart re-subscribed to CBS All Access and later Paramount+ on certain occasions, including October 11, 2022. *See id.* ¶ 19.  That subscription lasted until May 8, 2023.  *Id.*[2]  In January 2023, while Plaintiff Stewart was subscribed to Paramount+, CBSI sent Plaintiff Stewart an email informing him of an update to the Terms of Use associated with the Paramount+ service.  *Id.* ¶ 19, Ex. I.  The email was clearly from Paramount+ and had the topic line "Our Updated Terms of Use."  *Id.*  This email informed Plaintiff Stewart that "[w]e have updated our Terms of Use," and "[t]he updates contain important information about your legal rights, including updates to the arbitration clause."  *Id.*  The phrase "Terms of Use" was clearly hyperlinked, appearing in blue and underlined, and clicking on the phrase "Terms of Use" led to the current Paramount+ Terms.  *Id.*  Near the top, the Paramount+ Terms clearly state that "[i]f you continue to use the Services after we change these Terms, you accept all changes."  *Id.*  CBSI's records show that this email was delivered to Plaintiff Stewart and that the email was opened.  *Id.*  Plaintiff continued using the service by continuing to watch videos on the Paramount+ service and re-subscribing multiple times after receiving this email.  *Id.* ¶ 16.  Thus, Plaintiff Stewart's continued use of the service following this email bound him to the Paramount+ Terms.

---

[2] CBSI's records indicate that Plaintiff Stewart has not watched Paramount+ content on a computer since November 2, 2021.  Second Saraf Decl. ¶ 28.  Instead, Plaintiff Stewart has watched on other non-web based streaming devices, such as Apple iOS, throughout the years, including in 2024.  *Id.* ¶ 27.

**B.    The Paramount+ Terms of Use Include an Arbitration Agreement and Class Waiver**

The Paramount+ Terms contain a conspicuous and binding arbitration agreement requiring parties to arbitrate their disputes with CBSI.  Second Saraf Decl. ¶ 21, Ex. C.  They note in the first paragraph that "These Terms of Use ("Terms"), including the 'Dispute Resolution; Arbitration Agreement' provisions in Section 1 below, govern your use of our website[.]"  *Id.*  Further down, under the "Dispute Resolution; Arbitration Agreement" heading, the Paramount+ Terms provide that:

> IF YOU OR WE HAVE **ANY DISPUTE WITH OR CLAIM** AGAINST THE OTHER (A "CLAIM") ARISING OUT OF OR RELATING IN ANY WAY TO THE SERVICES OR THESE TERMS . . . YOU AND WE EACH AGREE TO RESOLVE SUCH DISPUTES THROUGH AN INDIVIDUAL BINDING ARBITRATION OR AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT.

*Id.* § 1 (emphasis added).  While a user can opt to proceed in arbitration or small claims court, the Terms are clear that "[c]lass arbitrations and class actions are not permitted[.]"  *Id.*  Additionally, the parties agree that "the U.S. Federal Arbitration Act governs the interpretation and enforcement of this provision, and [] you and we are each waiving the right to a trial by jury or to participate in a class action."  *Id.*  Finally, the Paramount+ Terms further state "[a]ny such arbitration shall be governed by applicable rules of National Arbitration & Mediation ('NAM') . . . as modified by this Section 1 (the 'Arbitration Agreement'), and will be administered by NAM."  Second Saraf Decl. ¶ 21, Ex. C § 1.2.

Despite Plaintiffs' agreements to arbitrate disputes with CBSI upon creating their accounts and subscribing, Plaintiffs filed this putative class action alleging violations of the VPPA, the Federal Wiretap Act, CIPA, and intrusion upon seclusion, thereby breaching the Paramount+ Terms of Use.  *See* FAC ¶ 1, 120.  The Paramount+ Terms require arbitration of all claims related

to the Paramount+ service, including all of Plaintiffs' claims here, which are based on allegations that CBSI "employed Facebook, TikTok, and Taboola, among other third parties, to intercept and disclose consumers' search terms, video watching information, and personally identifiable information without seeking or obtaining their consent."  FAC ¶ 1; Second Saraf Decl. ¶ 21, Ex. C § 1.

## **ARGUMENT**

### I. **The Court Should Compel Arbitration of Plaintiffs' Claims**

All Plaintiffs consented to arbitration of their claims by agreeing to the Paramount+ Terms. Second Saraf Decl. ¶ 21, Ex. C § 1.  The Paramount+ Terms to which Plaintiffs agreed contain (i) an arbitration clause and (ii) a class waiver.  *Id.*  The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") applies to this arbitration agreement, and it "requires courts to enforce covered arbitration agreements according to their terms."  *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019). Second Saraf Decl. ¶ 21, Ex. C § 1.  Under these facts, the Court should compel individual arbitration of Plaintiffs' claims.

### A. **The Arbitration Agreement Is Governed by the Federal Arbitration Act**

The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Indeed, there is a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (citation omitted), and the FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'"  *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (citation omitted).  Under the FAA, courts must "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

The Terms state that the FAA "governs the interpretation and enforcement" of the agreement. Second Saraf Decl. ¶ 21, Ex. C § 1. Moreover, in their FAC, Plaintiffs suggest Paramount+ involves interstate commerce, alleging that Defendant is "a 'video tape service provider' . . . because it engaged in the business of renting, selling, and delivering audiovisual materials . . . and those deliveries affect interstate or foreign commerce." FAC ¶ 126. In addition, courts in this District have recognized that the FAA covers online transactions and entertainment. *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (finding that the FAA governed a contract related "to internet transactions and rideshare services"); *Pincaro v. Glassdoor, Inc.*, 2017 WL 4046317, at *4-8 (S.D.N.Y. Sept. 12, 2017) (finding that website terms of use were governed by the FAA). Furthermore, the FAA also applies where, as here, the parties are citizens of different states. *Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 762 (S.D.N.Y. 2013). As such, the FAA clearly applies to this agreement and mandates moving this suit into arbitration. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22.

## B.    The Arbitration Agreement is Valid and Should be Enforced

Under the FAA, "a district court must grant a motion to compel arbitration [1)] if a valid arbitration agreement exists and [2)] if the scope of the agreement governs the issues in the case." *Zambrana v. Pressler & Pressler, LLP*, 2016 WL 7046820, at *2 (S.D.N.Y. Dec. 2, 2016); *see also Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015); *Citigroup Inc. v. Sayeg Seade*, 2022 WL 179203, at *5 (S.D.N.Y. Jan. 20, 2022). Both requirements are met here.

### 1.   Plaintiffs Entered into a Valid Arbitration Agreement

When determining the validity of an agreement to arbitrate under the FAA, federal courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Whether or not the parties have agreed to arbitrate is a question of state contract

law.").  This case has been brought within the state of New York and the Terms state that "all claims arising from or related to your use of the Services will be governed by and construed in accordance with the State of New York[.]"  Second Saraf Decl. Ex. C § 15.  As such, New York law properly governs Plaintiffs' claims.  *Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 475 (2015) (holding that choice of law provisions selecting New York law must be enforced by their terms, since "by including a choice-of-law provision in their contracts, the parties intended for only New York substantive law to apply."); *Capstone Logistics Holdings, Inc. v. Navarrete*, 2018 U.S. Dist. LEXIS 216940, at *66-67 (S.D.N.Y. Oct. 25, 2018) (explaining New York courts should not "consider the public policy of *foreign states*—including California—to overturn an otherwise valid contractual choice of law provision," lest such a consideration "swallow whole the *Ministers* holding that courts need not engage in conflicts analysis."), *aff'd & remanded*, 796 F. App'x 55 (2d Cir. 2020).[3]  New York courts, including the Second Circuit, applying New York law, regularly affirm arbitration agreements similar to the agreement at issue in this case.

Agreements where website visitors assent to hyperlinked terms by affirmatively clicking a button along with reasonable notice of the terms at issue, as here, are enforceable like any other contract.  Second Saraf Decl. ¶¶ 8-9, 13-14, Exs. B, E; *Peiran Zheng v. Live Auctioneers LLC*, 2021 WL 2043562, at *5 (S.D.N.Y. May 21, 2021) ("[t]herefore, the parties entered into a valid [arbitration] agreement when the plaintiff clicked 'AGREE' and continued to use the defendant's website."); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 831 (S.D.N.Y. 2020) (enforcing arbitration where users were given clear notice that "by clicking the Sign Up . . . button, you agree to our **Terms of Service** and **Privacy Policy**"); *Pincaro*, 2017 WL 4046317, at *1 (compelling

---

[3] In any event, even if the Court applied California law, "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term" which "makes a choice-of-law analysis unnecessary."  *Curtis v. JPMorgan Chase Bank, N.A.*, 2024 WL 283474, at *3 (S.D.N.Y. Jan. 25, 2024) (citations omitted).

arbitration where the sign-up page notified Plaintiff "that, by creating an account, they agree to be bound [by] the company's Terms of Use"); *Hu v. Whaleco, Inc.*, 2024 WL 4481439, at *3, *18 (E.D.N.Y. Oct. 1, 2024) (enforcing an arbitration agreement where the sign-up page had reasonably conspicuous notice and hyperlinks, stating "[b]y continuing, you agree to our **Terms of Use** and **Privacy & Cookie Policy**."); *Garcia v. Nabfly, Inc.*, 2024 WL 1795395, at *2, *10 (S.D.N.Y. Apr. 24, 2024) (enforcing an arbitration agreement where the sign-up page had the following language below the "Create Account" button: "By creating an account, you agree to the Terms of Use and Privacy Policy."); *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *3, *13 (S.D.N.Y. Nov. 20, 2017) (explaining courts "have routinely upheld" agreements that "require a user to click an 'I agree' button after being presented with terms," and recommending a VPPA claim be arbitrated), *adopted by*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018). Here, CBSI provided reasonable notification of the Paramount+ Terms on the Paramount+ account sign-up page, stating that "[b]y pressing 'Continue', you confirm that you have read and agree to the Terms of Use and acknowledge our Privacy Policy." Second Saraf Decl. ¶¶ 9, 14, Ex. B. The CBS All Access website similarly provided individuals with adequate notice of the CBS All Access Terms via a hyperlink and language informing individuals that "[b]y registering you become a member of the CBS Interactive family of sites and you have read and agree to the <u>Terms of Use</u> . . . ." *Id.* ¶ 17-18. Individuals had to press a button confirming their agreement to CBSI's Terms to finish creating their accounts, which appeared immediately under this language. *Id.*

Courts also recognize that making terms and conditions available via hyperlink, as CBSI did here, *id.*, provides reasonable notice supporting an enforceable agreement. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) ("That the Terms of Service were available only by hyperlink does not preclude a determination of reasonable notice."); *Zaltz v. JDATE*, 952 F. Supp.

2d 439, 454 (E.D.N.Y. 2013) (finding terms were "reasonably communicated" to plaintiff where she was required to check a box "next to the statement 'I confirm that I have read and agreed to the Terms and Conditions of Service' (with a hyperlink to the Terms and Conditions of Service over those words)."); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-41 (S.D.N.Y. 2012) (collecting cases applying hyperlinked terms against website users); *Peiran Zheng*, 2021 WL 2043562, at *5 ("[P]arties entered into a valid agreement when the plaintiff clicked 'AGREE'[,] . . . continued to use the defendant's website[, and] . . . had 'reasonable notice of the arbitration provision' in the hyperlinked Terms & Conditions."); *Aminoff & Co. LLC v. Parcel Pro, Inc.*, 2022 WL 987665, at *5 (S.D.N.Y. Apr. 1, 2022) (finding Plaintiff was on inquiry notice of terms due to the web design "drawing the eye to the text, and providing a hyperlink to the Terms"); *Wu v. Uber Techs., Inc.*, 2024 WL 4874383, at *8 (N.Y. Nov. 25, 2024) ("[a] reasonably prudent user would have understood from the color, underlining, and placement of that text, immediately beneath the sentence 'encourag[ing]' users to 'read [the] updated Terms in full,' that clicking on the words 'Terms of Use' would permit them to review those terms in their entirety"); *Pincaro*, 2017 WL 4046317, at *6 ("a reasonably prudent user knows that text that is highlighted in blue and underlined is a hyperlink to another webpage where additional information will be found."); *Feld*, 442 F. Supp. 3d at 832 (finding terms of use reasonably conspicuous where "[t]he 'Terms of Service' and 'Privacy Policy' terms appear in blue type that contrasts with the sign-up page background, indicating that they are hyperlinks; the remainder of the text is black"). Here, as in those cases, CBSI's Terms and Privacy Policy were hyperlinked and reasonably conspicuous to Plaintiffs because they appeared in blue, contrasting with the surrounding gray text. Second Saraf Decl. ¶¶ 8, 13 Exs. B, E.

Although Plaintiff Stewart initially assented to the CBS All Access Terms, he agreed to

the current Paramount+ Terms through his continued use of Paramount+ after receiving notice of the current Terms.  Under New York law, users can be bound by updated terms of use included in emails if those emails contained reasonably conspicuous notice of the terms and the user somehow manifested assent to those terms.  *See, e.g.*, *Sacchi v. Verizon Online LLC*, 2015 WL 765940, at *8 (S.D.N.Y. Feb. 23, 2015) (finding that Plaintiffs assented to updated terms where they continued using the service after being notified by email with "explicit notice of the existence of the Amended Agreement"); *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 197 (2d Cir. 2015) (finding a forum selection clause enforceable where tour company provided reasonable notice of the terms and conditions via emails where "emails [] sufficiently directed [plaintiff's] attention to the Booking Terms and Conditions by means of a hyperlink and language advising [plaintiff] to click on the hyperlink"); *Pincaro*, 2017 WL 4046317, at *6 (finding that "Plaintiffs unambiguously assented to the Terms" where an email "reasonably put Plaintiffs on notice that the Terms were being updated" and provided a hyperlink to the updated terms); *Olsen v. Charter Commc'ns, Inc.*, 2019 WL 3779190, at *5-6 (S.D.N.Y. Aug. 9, 2019) (finding Plaintiffs manifested assent to terms where notice of updated terms and an address to the online terms were included within customers' billing statements); *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *11-13 (N.D. Cal. July 31, 2023) (finding plaintiff bound to terms they did not originally agree to where an email notice of updated terms provided reasonably conspicuous notice of the terms and consumer manifested assent to these terms).

Indeed, CBSI provided Plaintiff Stewart with notice of the current Paramount+ Terms in an email informing him that CBSI "updated [its] Terms of Use" with a hyperlink to the applicable Terms.  Second Saraf Decl. ¶ 19, Ex. I.  CBSI's records show that this email was delivered to Plaintiff Stewart and that the email was opened.  *Id.*  The subject line clearly notified Plaintiff

Stewart that the email was from Paramount+ and related to the updated Terms. *Id.* Further, Plaintiff Stewart could easily access and read the Paramount+ Terms because the phrase "Terms of Use" was hyperlinked, appearing underlined with blue text. *Id.* Moreover, the email clearly related to Plaintiff Stewart's subscription to Paramount+. The email was from Paramount+ and informed Plaintiff that the Terms "contain important information about **your** legal rights." *Id.* (emphasis added). The bottom of the email also mentions that Plaintiff received this email "because of [his] Paramount+ subscription." Finally, the email specifically informed Plaintiff Stewart that these changes to the Terms contained "updates to the arbitration clause." *Id.* Therefore, Plaintiff Stewart was on notice that the email affected his arbitration rights with CBSI in relation to his subscription to Paramount+.

Plaintiff then manifested his assent to the current Paramount+ Terms through his continued use of the service. The Terms—which were available via hyperlink in the email—clearly informed Plaintiff Stewart "[i]f you continue to use the Services after we change these Terms, you accept all changes." Second Saraf Decl. ¶ 23, Ex. C. Following the email, Plaintiff Stewart remained subscribed to the service. *Id.* ¶ 16. By remaining subscribed to Paramount+ after receiving this email, Plaintiff manifested his assent to the updated Terms. *Id.* ¶ 22. Not only did Plaintiff Stewart maintain his subscription to Paramount+, he also continued watching video content on the service following notice of the Terms. *Id.* ¶ 16. He even affirmatively *re-subscribed* to the Paramount+ service following the email. *Id.* ¶ 16, Ex. F. Thus, through Plaintiff Stewart's continued use of the service and affirmative re-subscription to the service, he manifested his assent to the Terms and bound him to the arbitration agreement.[4]

---

[4] *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 130 (2d Cir. 2012) is inapposite here. First, unlike the *Schnabel* plaintiff, Plaintiff Stewart already agreed to CBSI's Terms before he received this email. Second, Plaintiff Stewart actively resubscribed to his account after receiving his email and did not merely pay passive monthly subscription fees unlike the plaintiff in *Schnabel*. Third, the email sent to Plaintiff Stewart clearly indicated it concerned the "Terms of Use"

As such, Plaintiffs plainly entered into valid and enforceable written agreements to arbitrate their VPPA, Wiretap Act, CIPA, and intrusion upon seclusion claims, and the Court should enforce these agreements.

### 2. The Arbitration Agreement is Not Unconscionable

Plaintiffs have no basis to allege that the arbitration agreement is unconscionable. Under the Terms, Plaintiffs assented to an arbitrator deciding "[a]ll issues, including the scope and enforceability of this Arbitration Agreement[.]" Second Saraf Decl. ¶ 21, Ex. C at § 1.2. As a result, the issue of whether the arbitration agreement is enforceable must be resolved in arbitration. *Lewis v. Samsung Elecs. Am., Inc.*, 2023 WL 7623670, at *11 (S.D.N.Y. Nov. 14, 2023) (enforcing clause delegating resolution of enforceability issues to the arbitral provider and holding "[t]he arbitrator, not the Court, must decide whether the Arbitration Agreement is unconscionable"); *McDougall v. Samsung Elecs. Am., Inc.*, 2023 WL 6445838, at *7 (S.D.N.Y. Oct. 3, 2023) ("[P]arties may delegate the threshold question of arbitrability to an arbitrator, 'so long as the parties' agreement does so by clear and unmistakable evidence.'").

Even if the Court assessed whether the arbitration clause were enforceable, its assessment would be limited to evaluating whether the arbitration agreement (as opposed to the entire contract) is unconscionable. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010). Unconscionability encompasses a "'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh or 'one-sided' results." *Concepcion*, 563 U.S. at 340 (citation omitted).

The arbitration agreement here is not procedurally unconscionable. When assessing

---

unlike the email in *Schnabel* which was labeled as a "welcome" email with the terms buried at the bottom of the email. *See also Valle v. ATM Nat'l, LLC*, 2015 WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015) (finding reliance on *Schnabel* misplaced where notice of an arbitration provision was clearly stated in defendant's letter to customers and plaintiffs actively used their ATM accounts after being notified of the change in terms).

procedural unconscionability, courts look at "the contract formation process and the alleged lack of meaningful choice[.]" *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 F. App'x 274, 278 (2d Cir. 2018). Here, Plaintiffs were not forced to make Paramount+ streaming accounts. Rather, there are many alternatives to receive Paramount programming, including traditional cable and other services. *See Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 169 (2d Cir. 1997) (airline flight ticket contract was not unconscionable where alternative destinations and modes of transportation existed for purchasers).

The Terms are also not "surprising." The sign-up pages and email provided clear notice informing users that they were accepting the Terms. Second Saraf Decl. ¶ 8, 13, 17, 19, Ex. B, E, G, & I. The links to the Terms were plainly distinguishable from the surrounding text. *Id.* Further, the Terms mark the arbitration provision with clear headings, disclaimers in all capital letters, and contain plain English explanations regarding the implications of the agreement. Second Saraf Decl. ¶ 20, Ex. C. Indeed, the arbitration provisions are conspicuous, emphasized, and not hidden. *Carr v. Credit One Bank*, 2015 WL 9077314, at *3 (S.D.N.Y. Dec. 16, 2015) ("This arbitration clause was clear, conspicuous, and preceded by a heading written in all capital letters and bold print."); *Flores v. Chime Fin., Inc.*, 2022 WL 873252, at *5 (S.D.N.Y. Mar. 23, 2022) (granting motion to compel and finding Plaintiff "had reasonable notice of the arbitration provisions" where the website terms "contained bolded, capitalized, and otherwise conspicuous text.").

Plaintiffs similarly cannot demonstrate substantive unconscionability of the Terms. *See Concepcion*, 563 U.S. at 340 (finding that a contract is substantively unconscionable if it leads to "'overly harsh' or 'one-sided' results"). The Terms at issue are far from one-sided. They require both Plaintiffs and CBSI to arbitrate claims, making the agreement mutual. Second Saraf Decl. ¶ 21, Ex. C § 1. *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569-70 (S.D.N.Y. 2013)

(arbitration agreement that applied to both parties was "not one-sided" and "not substantively unconscionable."); *Hu*, 2024 WL 4481439, at *6 (finding arbitration agreement requiring batch arbitration was "not void under the plain language of the Terms, and Defendant [could] seek to compel arbitration"). The Terms also incorporate a neutral third party's rules, which call for a neutral arbitrator, a written decision, and discovery. NAM, *Comprehensive Dispute Resolution Rules & Procedures*, Rule Nos. 18, 22, 34, https://www.namadr.com/content/uploads/2024/10/Comprehensive-Rules-as-of-10.1.2024.pdf. This too precludes a finding of substantive unconscionability. *See Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 456 (E.D.N.Y. 2019) ("Use of American Arbitration Association rules does not render an arbitration agreement unconscionable.").[5]

Indeed, in *Brooks v. WarnerMedia Direct, LLC*, this court recently determined that arbitration provisions substantially similar to those in the Paramount+ Terms, were not "substantively unconscionable." 2024 WL 3330305, at *17-18 (S.D.N.Y. July 8, 2024). For example, like the terms in *Brooks*, the Paramount+ Terms require that claimants provide individualized and "written notice[s] of dispute" describing "the nature and basis of [the] Claim[s]." Second Saraf Decl. Ex. C § 1.1; *Brooks v. WarnerMedia Direct, LLC*, No. 1:23-cv-11030 (S.D.N.Y. Nov. 16, 2023), ECF No. 48-2, at Ex. 9 § 5.4(b). Additionally, both the *Brooks* terms and the Paramount+ Terms require both parties to engage in "a good faith effort to resolve the dispute for a period of 60 days." Second Saraf Decl. Ex. C, at § 1.6; *Brooks*, No. 1:23-cv-11030 (S.D.N.Y. Nov. 16, 2023), ECF No. 48-2, at Ex. 9 § 5.4(b). The *Brooks* terms and

---

[5] The Ninth Circuit's decision in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024) does not establish otherwise. As explained, New York law—not California law—applies in this case, and CBSI's Terms of Use delegate enforceability decisions to the arbitrator. In addition, CBSI's Terms differ significantly from those in *Heckman*, and the concern there—that individuals would be bound by rulings in cases without being able to participate in those cases—is inapplicable here, given Plaintiffs could arbitrate their individual claims. 120 F.4th at 684.

Paramount+ Terms also share nearly identical staging procedures. Second Saraf Decl. Ex. C, at § 1.6; *Brooks*, No. 1:23-cv-11030 (S.D.N.Y. Nov. 16, 2023), ECF No. 48-2, at Ex. 9 § 5.4(i) (implementing a staged mass arbitration process as follows: (1) 50 claims are selected for arbitration, which is followed by a global mediation; (2) if remaining claims are not resolved, 100 claims are selected for arbitration, followed by a global mediation; (3) if remaining claims are not resolved, 200 claims are selected for arbitration, followed by a global mediation, with the option to then opt out of arbitration altogether and pursue claims in court). Thus, as in *Brooks*, "the mass arbitration provisions of the NAM Agreement [in the Paramount+ Terms] are [not] substantively unconscionable." 2024 WL 3330305, at *18; *see also Hu*, 2024 WL 4481439, at *4, *6 (finding the arbitration clause requiring administration of arbitration demands in batches of 100 did not render the agreement "invalid" or "unenforceable").

### 3. Plaintiffs' Claims Fall within the Scope of the Arbitration Clause

Plaintiffs' claims fall squarely within the scope of CBSI's arbitration agreement. In determining whether parties intended for a specific matter to be within the scope of the arbitration agreement, "the general rule is that courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344 (2d Cir. 2010) (citing *First Options*, 514 U.S. at 944). A court must resolve all doubts about the scope of an arbitration agreement "in favor of arbitrability," *New York v. Oneida Indian Nation*, 90 F.3d 58, 61 (2d Cir. 1996); *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019). As New York law applies to the agreement with Plaintiffs, the court must also consider New York's "strong public policy favoring arbitration." *Ragone v. Atl. Video at Manhattan Ctr.*, 2008 WL 4058480, at *6 (S.D.N.Y. Aug. 29, 2008), *aff'd*, 595 F.3d 115 (2d Cir. 2010).

The arbitration clause has been drafted to broadly cover disputes relating to the use of CBSI's offerings, including its websites. The Terms provide that "IF YOU OR WE HAVE ANY

DISPUTE WITH OR CLAIM AGAINST THE OTHER . . .  ARISING OUT OF OR RELATING IN ANY WAY TO THE SERVICES OR THESE TERMS . . . YOU AND WE EACH AGREE TO RESOLVE SUCH DISPUTES THROUGH AN INDIVIDUAL BINDING ARBITRATION OR AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT."  Second Saraf Decl.  ¶ 20, Ex. C at § 1.  The Second Circuit has noted that an arbitration clause is "broad" where the agreement requires "arbitration of any and all disputes[,]" like the agreement at issue here.  *Zambrana*, 2016 WL 7046820, at \*3; *Holick*, 802 F.3d at 394 (finding an agreement broad when it applies to "[a]ll claims, disputes, or controversies arising out of, or in relation to" an agreement).  The "arising" language in the clause also creates a "presumption in favor of arbitrating Plaintiffs claims." *Chestnut v. Whitehaven Income Fund I, LLC*, 2014 WL 5388562, at \*1 (S.D.N.Y. Oct. 23, 2014). Moreover, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  Thus, Plaintiffs' VPPA, Wiretap Act, CIPA, and intrusion upon seclusion claims based on their alleged use of Paramount+ fall well within the scope of the arbitration clause in the parties' agreements.

### 4.  Plaintiffs Refused to Arbitrate as Required

Rather than initiate arbitration as required under the Terms, Plaintiffs instead have filed a federal lawsuit.  Plaintiffs have therefore refused to arbitrate.  *See Citigroup*, 2022 WL 179203, at \*5, \*7 (explaining that after considering whether a valid agreement to arbitrate exists, the court considers whether one party has "refused to arbitrate[,]" and that "[a] party can be deemed to have refused arbitration by filing a lawsuit on a matter that comes within the scope of the arbitration clause").  Because Plaintiffs entered into a valid arbitration agreement and have refused to arbitrate, the Court should compel arbitration of their claims.

## II.    The Court Should Dismiss the Putative Class Claims and Compel Plaintiffs to Proceed on an Individual Basis

Plaintiffs' claims on behalf of a putative class are not only facially defective, but they also are precluded by Plaintiffs' agreement to a class action waiver.  Class action waivers like the one in the Paramount+ Terms of Use are enforceable under both the FAA and New York law.  *See, e.g.*, *Concepcion*, 563 U.S. at 352 (holding such waivers enforceable under the FAA); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013) (Rule 23 does not "establish an entitlement to class proceedings for the vindication of statutory rights"); *Biggs v. Midland Credit Mgmt., Inc.*, 2018 WL 1225539, at *1, *9 (E.D.N.Y. Mar. 9, 2018) (dismissing class claims based on class waiver); *Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (App. Div. 2004) ("[U]nder New York law, 'a contractual proscription against class actions . . . is neither unconscionable nor violative of public policy'").  As such, these class waivers are enforceable, and the Court should dismiss Plaintiffs' class claims.  *See Horton v. Dow Jones & Co., Inc.,* 2019 WL 952314, at *2 (S.D.N.Y. Feb. 27, 2019) ("[t]he Class Waiver is enforceable and bars Plaintiff from proceeding on a class basis"), *aff'd*, 804 F. App'x 81 (2d Cir. 2020); *McDaniel v. Home Box Off., Inc.*, 2023 WL 1069849, at *4 (S.D.N.Y. Jan. 27, 2023) ("[b]ecause the class waiver is enforceable, HBO's motion to dismiss the class claims with prejudice is granted").

Accordingly, the Court's order compelling arbitration of Plaintiffs' claims should specify that arbitration must proceed on an individual basis as dictated by the Terms.

## III.    The Court Should Stay All Individual Proceedings Pending Arbitration

Because Plaintiffs' claims are subject to individual arbitration, this litigation should be stayed pending resolution of the arbitration.[6]   Under the FAA, for proceedings "referable to

---

[6] Even if this Motion is denied, any subsequent appeal would require discovery to be stayed while the appeal is pending.  *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) ("[A] district court must stay its proceedings while the interlocutory appeal on arbitrability is ongoing.").

arbitration", the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (holding under Section 3 of the FAA that the "plain statutory text requires a court to stay the proceeding"); *Katz v. Cellco P'ship*, 794 F.3d 341, 345, (2d Cir. 2015) ("[The Second Circuit] join[s] those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested.").

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court order Plaintiffs to submit their claims to individual binding arbitration and dismiss their class claims, or in the alternative, stay the litigation pending the conclusion of the arbitration process.

Dated: February 14, 2025

Respectfully submitted,

  */s/ David L. Yohai*
David L. Yohai
David R. Singh
Blake J. Steinberg
Zoe A. Buzinkai
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
david.yohai@weil.com
david.singh@weil.com
blake.steinberg@weil.com
zoe.buzinkai@weil.com

*Attorneys for Defendant CBS Interactive Inc.*

## **Word Count Certification**

Pursuant to Local Rule 7.1(c), I hereby certify that the total number of words in this memorandum, excluding the caption, table of contents, table of authorities, signature block, and word count certification is 6,274.

/s/ *David L. Yohai*
David L. Yohai