**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VICTOR CHO, GIOVANNI STEWART, AND DAVID L'ABBE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CBS INTERACTIVE INC.,<br><br>Defendant. | Case No. 1:24-cv-08312-JPO |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
CBS INTERACTIVE INC.'S MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant CBS Interactive Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 2

LEGAL STANDARD ..... 6

ARGUMENT ..... 7

I. Plaintiffs Improperly Filed Their Amended Complaint After the Deadline ..... 7

II. Plaintiffs Lack Article III Standing ..... 7

A. Plaintiffs Cho and L'Abbe Lack Standing Because Their Video Watching Information Was Never Disclosed by the Meta Pixel ..... 7

B. Plaintiffs Fail to Plead A Concrete Harm Giving Rise to a CIPA § 638.51 Claim ..... 8

III. Plaintiffs' VPPA Claims Fail ..... 8

A. Plaintiff Stewart's Claims Fall Outside the Statute of Limitation ..... 8

B. Plaintiffs' Theories of Disclosure Are Not Well Pled ..... 10

1. The TikTok Pixel and Taboola Do Not Disclose PII Under the VPPA ..... 10

2. Plaintiffs Have Not Plausibly Alleged Knowing Disclosure of PII ..... 11

3. Plaintiffs Consented to the Alleged Disclosures ..... 13

IV. Plaintiffs' California State Law Claims Fail ..... 14

A. Plaintiffs' Claims Asserting Violations of California State Law Are Barred by CBSI's Choice of Law Provision ..... 14

B. Plaintiffs' Intrusion Upon Seclusion Claim is Not Well Pled ..... 15

1. Plaintiffs Lack a Reasonable Expectation of Privacy in the Information Allegedly Disclosed ..... 16

2. The Alleged Disclosure Would Not be Highly Offensive to a Reasonable Person ..... 17

C. Plaintiffs Fail to Plausibly Allege Facts Needed to Support Their CIPA Claims ..... 18

1. Plaintiffs' Wiretapping Claim Under § 631 Fails ..... 18

2. Plaintiffs' Pen Register and Trap and Trace Claim Under § 638.51 Fails ................. 21

V. Plaintiffs Fail to State a Claim Under the Federal Wiretap Act .......................................... 24

VI. Plaintiffs Claims Are Barred By Paramount+'s Mandatory Arbitration Provision........... 25

CONCLUSION.......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldana v. GameStop, Inc.*,
2024 WL 708589 (S.D.N.Y. Feb. 21, 2024)....13

*Arndt v. Gov't Emps. Ins. Co.*,
2024 WL 4335644 (D. Md. Sept. 26, 2024)....17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6, 7

*Aviles v. LiveRamp, Inc.*,
No. 24STCV19869 (Cal. Super. Ct. Jan. 28, 2025)....23

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017)....13

*Birdwell v. Costco Wholesale Corp.*,
No. C23-02416, 2024 Cal. Super. LEXIS 12721 (Contra Costa Cnty. May 15, 2024)....18

*Boulton v. Cmty.Com, Inc.*,
No. 23-3145, 2025 U.S. App. LEXIS 1819 (9th Cir. Jan. 28, 2025)....20

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....24

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021)....8

*Capstone Logistics Holdings, Inc. v. Navarrete*,
No. 17-cv-4819 (GBD), (S.D.N.Y. Oct. 25, 2018), *aff'd*, 796 F. App'x 55 (2d Cir. 2020)....15

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024)....19, 20

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l.*,
790 F.3d 411 (2d Cir. 2015)....6

*Coscarelli v. ESquared Hosp. LLC*,
364 F. Supp. 3d 207 (S.D.N.Y. 2019)....15

*Czarnionka v. Epoch Times Ass'n*,
2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022)....13

*Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*,
No. 22-cv-7962, 2023 WL 5935694 (S.D.N.Y. Sept. 12, 2023) ....................3

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................24, 25

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....................10

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024)....................17

*Esparza v. UAG Escondido A1 Inc.*,
No. 23CV0102, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024)....................21

*Fernandez v. Zoni Language Ctrs., Inc.*,
2016 WL 2903274 (S.D.N.Y. May 18, 2016) *aff'd*, 858 F.3d 45 (2d Cir. 2017)..........4, 10, 25

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. Aug. 23, 2023)....................9

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................17

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................17

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................22

*Griffith v. TikTok, Inc.*,
2024 WL 4308813 (C.D. Cal. Sept. 9, 2024), *appeal filed*, No. 25-553 (9th Cir. Jan. 28, 2025)....................16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................16, 20

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ....................16

*Howell v. New York Post Co.*,
81 N.Y.2d 115 (1993) ....................15

*In re Hulu Priv. Litig.*,
No. C 11-03764 LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014) ....................12

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ....................11

*iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal 2012) ....................17

*Javier v. Assurance IQ*,
2022 WL 1744107 (9th Cir. May 31, 2022) ....................19

*Kamps v. Fried, Frank, Harris, Shriver & Jacobson L.L.P.*,
274 F.R.D. 115 (S.D.N.Y. 2011) ....................7

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................24

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ....................22, 23

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023)....................18

*Mahmoud Shaban & Sons Co. v. Mediterranean Shipping Co., S.A.*,
2013 U.S. Dist. LEXIS 135136 (S.D.N.Y. Sept. 20, 2013)....................1

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023)....................11, 12

*Martinez v. D2C, LLC*,
2024 WL 4367406 (S.D. Fla. Oct. 1, 2024)....................13, 24

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ....................19

*Mikulsky v. Bloomingdales, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)....................20

*Ministers & Missionaries Benefit Bd. v. Snow*,
26 N.Y.3d 466 (2015) ....................15

*My Invs. LLC v. Starr Surplus Lines Ins. Co.*,
2024 WL 4859027 (S.D.N.Y. Nov. 20, 2024) ....................15

*Nat'l Union Fire Ins. Co. v. Seneca Fam. of Agencies*,
255 F. Supp. 3d 480 (S.D.N.Y. 2017)....................23

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................10

*Optimus Commc'ns v. MPG Assocs., Inc.*,
841 F. Supp. 2d 722 (E.D.N.Y. 2012) ....................25

*Orozco v. Fresh Direct, LLC*,
No. 15-CV-8226, 2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016)............................3, 4, 11, 15

*People v. McCoy*,
25 Cal. 4th 1111 (2001) ..........................................................................................21

*Ramiro Aviles v. S & P Glob., Inc.*,
380 F. Supp. 3d 221 (S.D.N.Y. 2019)........................................................................9

*Reiss v. Fin. Performance Corp.*,
97 N.Y.2d 195 (2001) ................................................................................................25

*Rodriguez v. Plivo Inc.*,
No. 24STCV08972, 2024 WL 5184413 (Cal. Super. Ct. Oct. 2, 2024) ........................23

*Rule v. Braiman*,
2024 WL 4042135 (N.D.N.Y. Sept. 4, 2024) ..............................................................15

*Sanchez v. Cars.com, Inc.*,
No. 24STCV13201 (Cal. Super. Ct. Jan. 27, 2025).....................................................23

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ...................................................................18, 19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...............................................................................................6, 7, 8

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......................................................................................16

*United States v. Hernandez*,
2020 WL 3257937 (S.D.N.Y. June 16, 2020) ..............................................................23

*United States v. Kidd*,
394 F. Supp. 3d 357 (S.D.N.Y. 2019)..........................................................................23

*United States v. Rodriguez*,
968 F.2d 130 (2d Cir. 1992)..........................................................................................22

*United States v. Ulbricht*,
858 F.3d 71 (2d Cir. 2017)............................................................................................23

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022)............................................................................11

*Xu v. Reuters News & Media Inc.*,
24 Civ. 2466 (PAE), 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025).................................8, 22

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................17, 20

**Statutes**

Cal. Civ. Proc. Code § 335.1 ....................8

Cal. Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq*. .................... *passim*

Fed. R. Civ. P. 15(a) ....................7

Fed. R. Civ. P. 12(b) ....................1, 6, 25

Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.* .................... *passim*

Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 *et seq*. .................... *passim*

**Other Authorities**

86 Ops. Cal. Atty. Gen. 198 (2003) ....................22

CBSI, *Privacy Policy*,
https://www.viacomcbsprivacy.com/en/policy?r=www.paramountplus.com ....................18

CBSI, *Privacy Policy* (eff. Mar. 4, 2021),
https://web.archive.org/web/20211003065035/https://www.viacomcbsprivacy.com/en/policy ....................9

CBSI, *Privacy Policy* (Dec. 29. 2022),
https://web.archive.org/web/20230515172700/https://www.viacomcbsprivacy.com/en/policy?r=www.paramountplus.com ....................6

META, https://www.facebook.com/ ....................4

Paramount, *Privacy Policy* (April 15, 2024),
https://privacy.paramount.com/en/policy?r=www.paramountplus.com ....................5, 6, 9

Paramount, *Terms of Use*, Paramount+ (Jan. 24, 2023),
https://legal.paramount.com/us/en/pplus/terms-of-use?r=www.paramountplus.com ....................5

Paramount+, https://www.paramountplus.com ....................3, 5, 11, 14

Taboola, https://www.taboola.com ....................10, 12

TikTok, https://ads.tiktok.com/ ....................4, 10, 12, 24

Defendant CBS Interactive Inc. ("CBSI") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiffs' First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

Plaintiffs' FAC, like the initial Complaint, is rife with deficiencies warranting its dismissal. In a belated amended complaint, Plaintiffs again assert misguided claims under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 *et seq*., and have also added several meritless claims, including under the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq*., and California common law. Plaintiffs assert alleged violations of these laws arising out of CBSI's use of the Meta Pixel, TikTok Pixel, and Taboola on its streaming service, Paramount+. Plaintiffs, however, do not and cannot state any actionable claims for several reasons:

*First*, in direct violation of Federal Rule of Civil Procedure 15(a)(1)(B) and their own representations to the court, *see* ECF No. 19, Plaintiffs failed to meet their filing deadline for the FAC. As it is untimely, the court should not consider the FAC.

*Second*, Plaintiffs fail to allege facts required to establish VPPA liability. Most notably, because the Meta Pixel was removed from all Paramount+ video pages in September 2022, Plaintiffs Cho and L'Abbe, who only watched on the web post-Pixel removal, do not have standing to assert an actionable VPPA claim related to the Meta Pixel because it never could have disclosed their information. Additionally, due to the VPPA's two-year statute of limitations, Plaintiff Stewart, who has not watched on a web browser since 2021, does not have an actionable claim.

[1] Paramount is also filing a motion to compel arbitration. In moving to dismiss, Paramount does not waive its right to arbitrate. *Mahmoud Shaban & Sons Co. v. Mediterranean Shipping Co., S.A*., 2013 U.S. Dist. LEXIS 135136, at *6 (S.D.N.Y. Sept. 20, 2013) ("[I]t is well established that" a "choice to file a motion to dismiss before moving to compel arbitration" does not waive the party's right to enforce the arbitration clause (citation omitted).

Plaintiffs' VPPA claims also fail because (1) the TikTok Pixel and Taboola do not disclose PII, (2) Plaintiffs fail to plead that CBSI "knowingly disclos[ed]" PII, and (3) Plaintiff consented to the alleged disclosure of PII by acknowledging the Privacy Policy.

*Third*, Plaintiffs' California claims fail for a myriad of separate and independent reasons. They fail as a matter of law because Plaintiffs agreed to a New York choice of law provision when subscribing to Paramount+. And, even if California law applied, which it does not, Plaintiffs both have no standing to bring a CIPA § 638.51 claim and have failed to state any § 631 claim. Plaintiffs' intrusion upon seclusion claims fail because Plaintiffs lack a reasonable expectation of privacy in the information allegedly disclosed, and the alleged disclosure is not "highly offensive" under California common law. Plaintiffs' CIPA § 631 claims fail because (1) CBSI falls under the direct party exemption, (2) Plaintiffs failed to plead use of a telephone, interception of the communication in transit, or that CBSI had access to the content of the alleged communications, and (3) Plaintiffs fail to plausibly allege that CBSI aided and abetted a CIPA violation. Likewise, the § 638.51 claims fail because Plaintiffs failed to allege any injury in fact sufficient for statutory standing, failed to plead they used a telephone, and have no protected privacy interest in the information allegedly disclosed.

*Fourth*, Plaintiffs' Federal Wiretap Act claim fails for the same reasons as their CIPA claims. Further, CBSI falls within a liability exception because it is a party to the communication that consents to the use of the trackers.

*Finally*, the Paramount+ Terms of Use mandatory arbitration clause bars Plaintiffs' claims. For all these reasons, Plaintiffs' claims should be dismissed.

## BACKGROUND

***The Parties.*** Plaintiffs allege that Defendant CBSI "owns and operates" Paramount+, a subscription-based service . . ." FAC ¶ 1; https://www.paramountplus.com/ (last visited Feb. 2,

2025).[2] Individuals must create accounts to access Paramount+ content. *See id*. Plaintiff Cho allegedly "has had an account with Paramount which he has used to stream shows and movies from his computer on a regular basis within the last two years." FAC ¶ 5. Plaintiffs Stewart and L'Abbe state they "ha[ve] had an account with Paramount which [they have] used to stream shows and movies from [their] computer[s] [since] Fall of 2021." FAC ¶¶ 9, 13.

***Meta (Facebook) Pixel***. Per the FAC, the Meta Pixel "collect[s] IP addresses, information about the web browser, page location, document, referrer and persons using the website," along with a "tracked URL [that] discloses to Facebook the exact video(s) that a website user views." FAC ¶¶ 51, 53, 54. However, the Meta Pixel was removed from all Paramount+ website video pages on September 28, 2022, more than two years before the filing of the complaint. *See* Second Declaration of Maureen Saraf ("Second Saraf Decl.") ¶ 23.[3] Indeed, CBSI's records indicate that Plaintiff Cho did not sign up for an account until August 2024—over a year after the Meta Pixel's removal. *Id.* ¶ 4. Similarly, L'Abbe's subscription did not begin until 2023. *Id.* ¶ 11.

Further, the FAC acknowledges a user must be logged into Paramount+ and Facebook simultaneously in order for there to be a disclosure of an individual's unencrypted Facebook ID, which can be used to locate an individual's Facebook profile. FAC ¶¶ 65, 72. Moreover, because the Meta Pixel works in connection with certain cookies, *e.g.*, *id.* ¶ 70, the user must also not have certain "Browser cookie controls" enabled on their browser. *See id.* ¶ 66 n.42.[4] Plaintiffs only

[2] The Court may consider materials from Defendant's website, because Plaintiff's claims are based on the website and Plaintiffs incorporate the website by reference in the Complaint. *See* FAC ¶¶ 1, 5, 9, 13, 98; *Orozco v. Fresh Direct, LLC*, No. 15-CV-8226, 2016 WL 5416510, at *5 (S.D.N.Y. Sept. 27, 2016) (assessing the "totality" of a website "incorporated by reference" into a complaint "at the center of Plaintiffs' allegations" in resolving a motion to dismiss).

[3] "On a factual challenge, a defendant may 'proffer[ ] evidence beyond the [p]leading,' and, if the defendant's evidence ''reveal[s] the existence of factual problems' in the assertion of jurisdiction[,]' then the plaintiff must 'come forward with evidence of their own to controvert that presented by the defendant.' . . . In such a case, 'no presumptive truthfulness attaches to the complaint's jurisdictional allegation; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts.'" *See Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-cv-7962, 2023 WL 5935694, at *3 (S.D.N.Y. Sept. 12, 2023).

[4] In the FAC, at ¶ 66 n.42, Plaintiffs cite a Meta webpage describing these "Browser cookie controls," which "may

allege that they used their Facebook accounts from the same browser they requested and viewed Paramount+ videos but never allege that they were logged into Facebook and Paramount+ simultaneously to enable this transmission. *Id.* ¶¶ 5-15. They also fail to describe whether they enabled cookies on their respective browsers or cleared their cookies. *Id.*; *see also* Meta, *Cookies Policy* (Dec. 12, 2023), https://mbasic.facebook.com/privacy/policies/cookies/printable/.[5]

***TikTok Pixel.*** Plaintiffs claim TikTok "trackers" "identif[y] consumers based on their unique and persistent TikTok identifiers," and identifiers are sent to TikTok "alongside the title of the video content the specific subscriber requested or viewed." FAC ¶ 84. Plaintiffs allege that "TikTok['s] Tracking Pixel is configured to scan form fields containing a user's email, first name, last name, phone number, city, state, country, and zip code." FAC ¶ 86. However, Plaintiffs' only support for this allegation is a screenshot with no description or indication of its origin. *Id.* ¶ 86, Figure 3. TikTok describes its Pixel as collecting information including: "ad/event information," "timestamp," "IP address," "user agent," "cookies," and "metadata & button clicks."[6] The TikTok Pixel does not transmit information that would allow an ordinary person to identify a specific individual when it transmits the geographic location of events and device and browser information. *See id*. Additionally, a browser's cookie settings impact the TikTok Pixel's data transmission.

***Taboola.*** Per Plaintiffs, "Taboola collects IP addresses to . . . ascertain a user's location and target that user with advertisements tailored to that specific location." FAC ¶ 92. Plaintiffs

---

offer settings that allow you to choose whether browser cookies are set and to delete them." Cookies Policy, META, https://www.facebook.com/privacy/policies/cookies?subpage=subpage-4.5 (last accessed Feb. 6, 2025). The webpage also links to popular browsers' cookie pages that instruct users how to block, delete, and manage cookies. *Id.*

[5] The Court may consider materials from the Facebook and Meta websites, because Plaintiff's claims are based on the websites and they incorporate the websites by reference in the Complaint. *See* FAC ¶¶ 47-59; *Orozco*, 2016 WL 5416510, at *5. Additionally on a motion to dismiss, "Courts may . . . take judicial notice of information contained on websites where 'the authenticity of the site has not been questioned.'" *See Fernandez v. Zoni Language Ctrs., Inc.*, 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016) *aff'd*, 858 F.3d 45 (2d Cir. 2017).

[6] *About TikTok Pixel*, TikTok, https://ads.tiktok.com/help/article/tiktok-pixel; *see also Fernandez,* 2016 WL 2903274, at *3. The Court may consider materials from Tiktok.com, because Plaintiff's claims are based on the website and they incorporate the website by reference in the FAC. FAC ¶¶ 82, nn. 60 & 61; *Orozco*, 2016 WL 5416510, at *5.

fail to plead that Taboola transmitted information about what videos they watched or how their browser cookie settings may have affected Taboola's ability to even transmit their IP addresses.

***Plaintiffs Assented to the Paramount+ Terms of Use and Privacy Policy.*** As explained in CBSI's Motion to Compel Arbitration, Paramount+ subscribers agree to its Terms of Use and are met with language stating that by creating an account, "you confirm that you have read and agree to the Terms of Use and acknowledge our Privacy Policy." *See Create an Account*, Paramount+, https://www.paramountplus.com/account/signup/createaccount (click "continue with free trial" to open "Create an Account" webpage). The phrases "Terms of Use" and "Privacy Policy" are blue hyperlinks, which are distinguishable from the surrounding text and lead to the Terms of Use ("Terms") and Privacy Policy. *Id.*

***Terms of Use.*** The Terms outline a dispute resolution process requiring arbitration if disputes are not resolved after contacting customer service. They also require sending an individualized, signed notice of dispute with relevant facts and the nature and basis of relief sought. *Terms of Use*, Paramount+ (Jan. 24, 2023), https://legal.paramount.com/us/en/pplus/terms-of-use?r=www.paramountplus.com. Plaintiffs did not comply with the Terms.

***Privacy Policy***. The Privacy Policy states: "[w]e collect and receive personal information associated with you and your device automatically when you use certain Paramount Services . . . We collect and receive device IDs and other unique identifiers and online activity data using device-based tracking technologies such as cookies, pixels, tags, beacons, scripts, and similar technologies. On certain pages of the Paramount Services, we use third-party tools to help us look at mouse movements, clicks, keystrokes, data or text entered, and the pages you visit." *Privacy Policy* (April 15, 2024), https://privacy.paramount.com/en/policy?r=www.paramountplus.com.[7]

---

[7] Prior versions of the Privacy Policy contained similar disclosures. *See* CBSI, *Privacy Policy* (Dec. 29. 2022), https://web.archive.org/web/20230515172700/https://www.viacomcbsprivacy.com/en/policy?r=www.paramountplu

Further, CBSI "may automatically receive certain information about you and your device using browser- or device-based tracking technologies . . . ." *Id.* In addition, the Privacy Policy explains how users can "manage how these tracking technologies are used by adjusting [his or her] device or browser settings . . . ." *Id.* It further offers that "[i]n some cases, you can opt out of tracking by [Paramount's] analytics providers by visiting their opt-out pages directly." *Id.*

## LEGAL STANDARD

***Rule 12(b)(1)***. A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) "for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (citations omitted). To establish constitutional standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal citations omitted).

***Rule 12(b)(6)***. Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining a complaint's adequacy, a court must disregard conclusory allegations and legal conclusions, which are not entitled to the assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff has a plausible—as opposed to merely conceivable—claim for relief. *Id.* at 679.

---

s.com.

## ARGUMENT

### I. Plaintiffs Improperly Filed Their Amended Complaint After the Deadline

After CBSI filed its original motions to dismiss and to compel arbitration, Plaintiff Cho informed the court of his intention to amend the original complaint on or before January 30, 2025 as required by the Federal Rules of Civil Procedure. ECF No. 19. However, Plaintiffs filed their FAC *after* January 30th, thereby violating their own representation and the Federal Rules of Civil Procedure. Fed. R. Civ. P. 15(a); ECF No. 20. Plaintiffs cannot be permitted to ignore deadlines without justification. *See Kamps v. Fried, Frank, Harris, Shriver & Jacobson L.L.P.*, 274 F.R.D. 115, 120 (S.D.N.Y. 2011) ("Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced." (citations omitted)). Plaintiffs did more than just amend the VPPA claim—they added additional plaintiffs, allegations, and meritless claims. The court should not consider the FAC.[8]

### II. Plaintiffs Lack Article III Standing

#### A. Plaintiffs Cho and L'Abbe Lack Standing Because Their Video Watching Information Was Never Disclosed by the Meta Pixel

Plaintiffs lack Article III standing for VPPA claims related to the Meta Pixel. *See TransUnion*, 594 U.S. at 423 (holding that under Article III, a plaintiff must show a concrete, particularized, and actual or imminent injury in fact that was likely caused by the defendant, and that would likely be redressed by judicial relief). CBSI removed the Meta Pixel from Paramount+ video pages on September 28, 2022, Second Saraf Decl. ¶ 23, yet CBSI's records show that Plaintiff Cho subscribed to Paramount+ in August 2024, *id.* at ¶ 4, and that Plaintiff L'Abbe

[8] This is not the first time Plaintiff failed to adhere to his own representations. In a November 26, 2024 letter, CBSI informed the Court of the parties' agreement for Plaintiff to amend its Complaint to name CBSI as defendant by December 20, 2024, but Plaintiff did not amend his Complaint as originally agreed. ECF Nos. 7, 16-18.

subscribed in August 2023, *id.* at ¶ 11—both well after the Pixel was removed from video pages. The Meta Pixel thus never disclosed any information about what videos Plaintiff Cho and Plaintiff L'Abbe watched and they suffered no harm from its use.[9] *See* 594 U.S. at 423-24.

### B. Plaintiffs Fail to Plead A Concrete Harm Giving Rise to a CIPA § 638.51 Claim

Plaintiffs' CIPA § 638.51 claims must be dismissed for lack of Article III standing because they have not pled a concrete injury-in-fact. *See Xu v. Reuters News & Media Inc.*, 24 Civ. 2466 (PAE), 2025 WL 488501, at *1 (S.D.N.Y. Feb. 13, 2025). Indeed, this Court recently granted a motion to dismiss for lack of standing in a § 638.51 case where the plaintiff alleged the defendant used three web trackers to "capture the 'outgoing addressing information'—namely, the IP address—sent by the device to the Website." *Id.* In *Xu*, the Court found the plaintiff's allegation that Reuters collected his IP address did not establish that he "suffered the type of concrete injury that courts have commonly recognized as supporting standing, such as physical, monetary, or reputational harm." *Id.* at *3. Plaintiffs here similarly have not plausibly alleged any concrete harm (FAC ¶ 181), and their § 638.51 claims should similarly be dismissed.

## III. <u>Plaintiffs' VPPA Claims Fail</u>

### A. Plaintiff Stewart's Claims Fall Outside the Statute of Limitation

Plaintiff Stewart's claims fall outside of the statute of limitation.[10] The original complaint was filed on November 1, 2024. ECF No. 1. However, Plaintiff Stewart fails to allege he watched any Paramount+ videos on the paramountplus.com website since 2021. FAC ¶ 9 ("Plaintiff

---

[9] Plaintiff's Meta Conversions API claim fails as well, because as Plaintiff acknowledges in a footnote, installation of the Meta Pixel is required for the operation of the Conversions API. FAC ¶ 100 n.65 ("[T]he Facebook Tracking Pixel works in conjunction with its Conversion API tool.")

[10] For all the claims at issue, the longest statute of limitation period is two years. *See* 18 U.S.C. § 2710 (for VPPA claims, "[n]o action may be brought under this subsection unless such action is begun within 2 years from the date of the act complained of or the date of discovery"); 18 U.S.C. § 2520 (for Federal Wiretap Act claims, an action "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation"); Cal. Civ. Proc. Code § 335.1 (setting a two year limitations period); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 624 (N.D. Cal. 2021) ("[u]nder the CIPA, the applicable statute of limitations is one year").

Stewart has had an account with Paramount which he has used to stream shows and movies from his computer Fall of 2021."). Nor can he make such an allegation, because CBSI's records confirm Plaintiff Stewart has not watched video content on the web in the past two years. Second Saraf Decl. ¶ 28. As Plaintiffs' claims all concern disclosure of information through Plaintiffs' web browser, Plaintiff Stewart does not have any viable claims within the statute of limitation. *Id.*

Further, Plaintiff Stewart cannot avail himself of the discovery rule because it requires him to have brought his claim after he discovered the alleged violation, or could have discovered it with "reasonable diligence." *Ramiro Aviles v. S & P Glob., Inc.,* 380 F. Supp. 3d 221, 277 (S.D.N.Y. 2019). Plaintiff Stewart has not—and cannot—sufficiently allege the disclosure could not have been discovered with reasonable diligence. Plaintiff Stewart claims there were "no disclosures or other indication that would inform a reasonable consumer" of the alleged disclosures (FAC ¶ 110), however, the Privacy Policy in place in fall 2021 (FAC ¶ 9) clearly disclosed that CBSI "may collect[s] or receive[s] certain information associated with you . . . includ[ing] information about your use of our Services and your preferences . . . through device-based tracking technologies such as cookies, pixels, tags, beacons, scripts, and similar technologies."[11] This policy was available online over three years before the original Complaint was filed, and a similar notice remains in place today. *Privacy Policy* (April 15, 2024), https://privacy.paramount.com/en/policy?r=www.paramountplus.com. Plaintiff Stewart therefore cannot rely on the discovery rule to assert his claims were tolled. *See Ramiro*, 380 F. Supp. 3d at 277 (declining to toll claims under discovery rule where, among other things, investment fund posted link on its website alerting plaintiffs to issues related to the claims they were now bringing).

---

[11] *See* CBSI, *Privacy Policy* (eff. Mar. 4, 2021), https://web.archive.org/web/20211003065035/https://www.viacomcbsprivacy.com/en/policy. The Court may consider the materials from the Wayback Machine. *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 165 n.14 (S.D.N.Y. Aug. 23, 2023) (taking judicial notice of webpage archived on Wayback Machine).

As Plaintiff Stewart was on notice of the disclosure of the information, the discovery rule does not apply, his claims are untimely, and cannot be tolled.

**B. Plaintiffs' Theories of Disclosure Are Not Well Pled**

***1. The TikTok Pixel and Taboola Do Not Disclose PII Under the VPPA***

Plaintiffs' TikTok Pixel allegations are deficient because this Pixel does not transmit information that allows a specific individual to be identified. The VPPA requires that Plaintiffs plausibly allege that an "ordinary person" could use information collected and transmitted to "identify a specific individual's video-watching behavior." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 283 (3d Cir. 2016) ("To an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person."). Though Plaintiffs make unsupported allegations that the TikTok Pixel collects users' names, phone numbers, and zip codes, FAC ¶ 86, TikTok's own disclosures confirm it collects information to determine "the geographic location of an event" and "the device make, model, operating system, and browser information," but not any user information that an ordinary person could use to identify an individual.[12] Therefore, it does not disclose data identifying a particular person as watching specific videos.

Similarly, Plaintiffs' Taboola-related allegations are deficient because Taboola "collects IP addresses to ascertain a users' location," which does not amount to disclosure under the VPPA. FAC ¶ 92. Instead, "Taboola collects only pseudonymized data."[13] Plaintiffs thus cannot claim that Taboola collected and transmitted information that identified them as having watched specific

[12] *About TikTok Pixel,* https://ads.tiktok.com/help/article/tiktok-pixel; *Fernandez*, 2016 WL 2903274, at *3 ("Courts may . . . take judicial notice of information contained on websites where 'the authenticity of the site has not been questioned.'").

[13] *See* Privacy Policy (Nov. 6, 2024), https://www.taboola.com/policies/privacy-policy. The Court may consider materials from Taboola's website, because Plaintiff's claims are based on the website and they incorporate the website by reference in the Complaint. FAC ¶¶ 92 & n.63; *see Orozco*, 2016 WL 5416510, at *5.

videos. *See Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 91 (S.D.N.Y. 2022) (holding that anonymized data, without more information allowing the association of user identification numbers with users, is not PII).

### *2. Plaintiffs Have Not Plausibly Alleged Knowing Disclosure of PII*

Plaintiffs fail to state actionable VPPA claims because they do not plausibly allege that CBSI knowingly disclosed PII. *See In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) ("For . . . an actionable VPPA violation, the video provider must have knowingly disclosed . . . [(1)] the consumer's identity; [(2)] the video material's identity; and [(3)] the connection between them.").

#### *a. No Disclosure of Specific Video Titles*

First, Plaintiffs have not adequately alleged an ordinary person could identify the video content that an individual watched. Indeed, Plaintiffs fail to allege "essential information for a VPPA claim, including . . . whether there are multiple videos on the page and, if so, which 'specific video materials' were requested or obtained by the website visitor[.]" *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023). The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services[,]" but Plaintiffs fail to identify what specific video content they viewed was disclosed. 18 U.S.C. § 2710(a)(3).

For example, per the FAC, "a tracked URL discloses to Facebook the exact video(s) that a website user views" and the TikTok Pixel "uses URL tracking technology[.]" FAC ¶¶ 54, 85. But Paramount+ URLs do not describe what videos are being viewed. A video URL on Paramount+ is a series of numbers that an ordinary person could not possibly connect to particular video material. *See* Star Trek II: Wrath of Khan, PARAMOUNT+, https://paramountplus.com/movies/video/1DooAass83NPqUjSxIWGPKeELkwa2CXp/ (last

accessed on February 10, 2025). The unattributed screenshots in the FAC show content that may have been have searched for, but searching for videos is not the same as requesting or obtaining videos—which must be shown to establish VPPA liability. *See* FAC Figure 2; *Martin*, 657 F. Supp. 3d at 285 ("[S]ending a URL of a . . . webpage which . . . may not include a video does not show that a person requested or obtained specific video materials or services."). Further, Taboola only collects IP addresses, and Plaintiffs do not claim it transmitted any show titles or specific viewing information for Plaintiffs.[14]

### *b. Plaintiffs' Identities Were Not Disclosed by CBSI*

Second, if PII was disclosed, it was not disclosed by CBSI. It is Meta, TikTok, and Taboola who place cookies on browsers and receive information from them.[15] To the extent cookies were transmitted at all, they were transmitted by the third party to itself. *See, e.g.*, *Hulu*, 86 F. Supp. 3d at 1093 n.3 ("[A website] can read only [its own] cookies, while Facebook can read only facebook.com cookies.").

### *c. Insufficient Allegations as to CBSI's Knowledge*

Third, Plaintiffs failed to plausibly allege any disclosure was made "knowingly," because this requires that the defendant know the technologies transmitted the alleged PII to a third party and that the third party used that information to match a user to their PII. *Hulu*, 86 F. Supp. 3d, at 1096. Plaintiffs allege, at most, that "personal viewing information" is "valuable in the digital advertising-related market" and CBSI knew how the "Tracking Tools" functioned. FAC ¶¶ 103,

---

[14] The FAC contains screenshots of Paramount+ "Collections" pages. *E.g.*, FAC ¶ 63, Figure 2. These pages have multiple videos on them; so any disclosure of visits to these pages would not be about a specific video watched and would not be actionable under the VPPA. *Martin*, 657 F. Supp. 3d at 284-85.

[15] *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 2758598, at *5 (N.D. Cal. June 17, 2014) ("Facebook sets the c_user cookie."); *Using Cookies with TikTok Pixel* (Aug. 2024), https://ads.tiktok.com/help/article/using-cookies-with-tiktok-pixel?lang=en ("Third-party cookies are created and owned by TikTok via TikTok's server and extend beyond individual domains."); *Taboola Cookie Policy* (Dec. 4, 2024), https://www.taboola.com/policies/cookie-policy#cookies-and-other-automated-means-of-data-collection ("Taboola places cookies on our Customers' websites and digital properties and uses these cookies as set forth in this policy.").

130. However, in addition to Plaintiffs' pleading failures addressed above, they fail to allege CBSI knew how Meta, TikTok, or Taboola would use the information received by any cookie.

Defendant's mere knowing implementation of a technology, by itself, does not satisfy this requirement. *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017) ("If Barnes & Noble did not think it was conveying PII, then there could be no knowledge of the conveyance, regardless of whether it knew what Facebook might do with the information."), *adopted*, 2017 WL 3726050 (S.D.N.Y. Aug. 28, 2017).[16] CBSI was never under the impression that these trackers were collecting PII, and that CBSI allowed this technology to be implemented on Paramount+ does not amount to knowing disclosure under the VPPA.

#### *d. Failure to Plausibly Allege Necessary Conditions for Disclosure*

Fourth, Plaintiffs do not address whether their browser cookie settings were properly enabled to permit data transmission. Nor do they allege they were logged into Facebook at the time they streamed content on Paramount+. For the Meta Pixel to transmit PII to Meta, the subscriber must meet several conditions including, without limitation: (1) the web browser's settings not automatically blocking cookies, and (2) being logged into their Facebook account on the same device and browser the subscriber is selecting the video on. *See Martinez v. D2C, LLC*, 2024 WL 4367406, at *7-8 (S.D. Fla. Oct. 1, 2024). As previously discussed, cookies need to be enabled on one's browser for the Meta Pixel, TikTok Pixel, and Taboola to fully function. Here, Plaintiffs only allege that they used the same browser to access both Facebook and Paramount+.

### *3. Plaintiffs Consented to the Alleged Disclosures*

Plaintiffs further fail to state a VPPA claim because CBSI obtained consent for any alleged

[16] Meta Pixel cases such as *Czarnionka v. Epoch Times Ass'n*, 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) and *Aldana v. GameStop, Inc.*, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) do not establish otherwise, as the courts there did not dispute that the c_user cookie is Meta's cookie, or that Meta deposits the cookie on users' browsers.

disclosures. The VPPA permits disclosure of PII when there is informed, written consent (1) "in a form distinct and separate from any form setting forth other legal or financial obligations;" (2) "at the time the disclosure is sought;" and (3) allows visitors to opt out of information sharing. 18 U.S.C. § 2710(b)(2)(B). Paramount+ satisfies all three criteria.

First, Paramount+ has a "distinct and separate" Privacy Policy that users acknowledge when they create accounts. 18 U.S.C. § 2710(b)(2)(B).[17] Second, consent to the Privacy Policy is obtained when a user creates an account on the Paramount+ website and the Policy has been posted on the website at all relevant times. *See* Paramount+, https://www.paramountplus.com/account/signup/createaccount. Because users encounter the Privacy Policy when they visit Paramount+, consent was therefore "given at the time the disclosure [was] sought." 18 U.S.C. § 2710(b)(2)(B). Third, the Privacy Policy clearly and conspicuously provides users with instructions on how to opt out of targeted advertising facilitated by the technologies at issue in the FAC. 18 U.S.C. § 2710(b)(2)(B); Paramount+, https://www.viacomcbsprivacy.com/en/policy?r=www.paramountplus.com. Plaintiffs therefore consented to the exact disclosures they allege violate the VPPA, barring their claims.

## IV. <u>Plaintiffs' California State Law Claims Fail</u>

### A. Plaintiffs' Claims Asserting Violations of California State Law Are Barred by CBSI's Choice of Law Provision

Plaintiffs agreed to the Paramount+ Terms and its binding New York choice of law provision when they subscribed.[18] This bars their California common law and CIPA claims.

---

[17] As shown on the Paramount+ website and discussed in CBSI's Motion to Compel Arbitration, Plaintiffs were required to acknowledge the current version of the Privacy Policy when they created Paramount+ accounts. *See* Second Saraf Decl. ¶¶ 4, 11.

[18] Plaintiffs all allege they have Paramount+ accounts (FAC ¶¶ 5, 9, 13). To create an account, a user must click "Agree & Continue" confirming that they have read and agree to the Terms of Use. *See Create an Account*, Paramount+, https://www.paramountplus.com/account/signup/createaccount. The Court may consider materials from Defendant's website, because Plaintiff's claims are based on the website and Plaintiffs incorporate the website by reference in the Complaint. *See Orozco*, 2016 WL 5416510, at *5.

*Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 220-21 (S.D.N.Y. 2019) (Under an Agreement "that all . . . claims be 'governed by and construed in accordance with the internal laws of the State of New York and without regard to conflicts of laws principles.' . . . It follows that her claims under California law . . . must be dismissed."). A New York choice of law provision "obviates the application of both common-law conflict-of-laws principles and statutory choice-of-law directives" that might be invoked to preserve the intrusion upon seclusion and CIPA claims; indeed, engaging in such an application "would contravene the primary purpose of including a choice-of-law provision in a contract — namely, to avoid a conflict-of-laws analysis and its associated time and expense." *Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 466, 475 (2015). New York courts have followed *Ministers* and decided not to "consider the public policy of foreign states—including California—to overturn an otherwise valid contractual choice of law provision," as such a consideration would "swallow whole the *Ministers* holding that courts need not engage in conflicts analysis." *Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17-cv-4819 (GBD), at *66-67 (S.D.N.Y. Oct. 25, 2018), *aff'd*, 796 F. App'x 55 (2d Cir. 2020); *see also My Invs. LLC v. Starr Surplus Lines Ins. Co.*, 2024 WL 4859027, at *3 (S.D.N.Y. Nov. 20, 2024). Plaintiffs' California state law claims should therefore be dismissed.

**B. Plaintiffs' Intrusion Upon Seclusion Claim is Not Well Pled**

Under New York law, there is "no common law right of privacy," and accordingly, courts have dismissed common law intrusion upon seclusion claims. *Rule v. Braiman*, 2024 WL 4042135, at *20 (N.D.N.Y. Sept. 4, 2024); *Howell v. New York Post Co.*, 81 N.Y.2d 115, 123-24, (1993). Even standing alone, this is grounds to dismiss the intrusion upon seclusion claims.

However, even if California law applied despite the New York choice of law provision—it does not—Plaintiffs have still not asserted a cognizable intrusion upon seclusion claim because

CBSI did "(1) intru[de] into a private place, conversation, or matter to which Plaintiffs have a reasonable expectation of privacy (2) in a manner highly offensive to a reasonable person." *Hammerling v. Google LLC,* 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (citations omitted); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).

#### ***1. Plaintiffs Lack a Reasonable Expectation of Privacy in the Information Allegedly Disclosed***

Plaintiffs have no reasonable expectation of privacy in the data allegedly collected by the Meta Pixel, TikTok Pixel, and Taboola. One does not have a reasonable expectation of privacy when "data collection is within users' common-sense expectation or when the information is not sensitive." *Hammerling*, 615 F. Supp. 3d at 1089. Plaintiffs attempt to plead that they had a reasonable expectation of privacy in information allegedly collected by CBSI, but they incorrectly argue that "[u]sers' search terms, browsing history, IP addresses, geolocation data, and website activity have all been recognized by society as sensitive information." FAC ¶ 155.

First, courts have rejected the argument that search terms contain sensitive information where "Plaintiffs do not allege or provide evidence that any named plaintiff searched for [] sensitive items." *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *9-10 & n.10 (C.D. Cal. Sept. 9, 2024), *appeal filed*, No. 25-553 (9th Cir. Jan. 28, 2025) (examples of sensitive search terms may include intimate or health-related terms). Plaintiffs fail to adequately plead that any sensitive search terms they used were disclosed. FAC ¶ 79, 155. Second, website users lack a reasonable expectation of privacy in IP addresses because "they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information." *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008). Third, there is no reasonable expectation of privacy in URLs because they only reveal basic website identification and web address information. *In re Zynga Priv. Litig.,* 750 F.3d 1098, 1108-09 (9th Cir. 2014).

Fourth, courts have similarly found that users do not have a reasonable expectation of privacy in their browsing history, website activity, or geolocation data. *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) ("The fact that ASI's software allegedly captured, among other things, Plaintiff's 'personal details' and 'browsing history,' . . . and IP address . . . is insufficient to demonstrate that Defendant's conduct constituted a serious invasion of a protected privacy interest"); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 199 (N.D. Cal. 2019) (an individual's "general location is not the type of core, value, informational privacy" that qualifies as sensitive information); *Arndt v. Gov't Emps. Ins. Co.*, 2024 WL 4335644, at *5 (D. Md. Sept. 26, 2024) ("Plaintiff cannot establish a concrete injury based on Defendant's alleged collection of mere website activity, such as . . . content viewed by Plaintiff on Defendant's website."). Plaintiffs therefore lack a reasonable expectation of privacy in the information allegedly collected.

#### *2. The Alleged Disclosure Would Not be Highly Offensive to a Reasonable Person*

Even if Plaintiffs had a reasonable expectation of privacy, the alleged collection of data here did not occur in a "manner highly offensive to a reasonable person," giving rise to an intrusion upon seclusion claim. California courts have held this is a "high bar." *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (Google's collection and disclosure of users' browsing histories was not highly offensive); *iPhone Application Litig*., 844 F. Supp. 2d 1040, 1063 (N.D. Cal 2012) (disclosing unique device identification numbers, personal data, and geolocation information to third parties without consent was not "an egregious breach of social norms" amounting to an invasion of protected privacy interest). Plaintiffs do not clear this "high bar": They were warned about the types of information that may be disclosed in the Privacy Policy, including information about their activity on the service. *See* CBSI, *Privacy Policy*, https://www.viacomcbsprivacy.com/en/policy?r=www.paramountplus.com. Therefore,

Plaintiffs' intrusion upon seclusion claim fails.

### C. Plaintiffs Fail to Plausibly Allege Facts Needed to Support Their CIPA Claims

#### *1. Plaintiffs' Wiretapping Claim Under § 631 Fails*

CIPA Section 631(a) has four avenues of relief: "(1) where a person 'by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument'; (2) . . . 'willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"; (3) . . . "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; and (4) . . . "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." Plaintiffs are not entitled to relief under any avenue. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743-44 (N.D. Cal. 2023).

##### *a. CBSI Is a Direct Party to the Alleged Communication*

CBSI is the intended recipient of any request directed from a user to view a particular page—and California courts have rightly held a direct party to a communication cannot eavesdrop on its own conversation. *Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1121 (S.D. Cal. 2023); *Birdwell v. Costco Wholesale Corp.*, No. C23-02416, 2024 Cal. Super. LEXIS 12721, at *10-11 (Contra Costa Cnty. May 15, 2024) (because "the duplication and sending of Facebook's secret code happens after the requests reaches its destination (Costco's server)," "[p]laintiff has not alleged Defendant's 'interception' while 'in transit'").

### *b. There Is No Underlying Violation of § 631*

#### i. <u>No Use of a Telephone</u>

Plaintiffs erroneously assert CIPA Section 631(a) applies to non-telephonic communications. Courts have held § 631(a)'s prohibition on telephonic wiretapping does not apply to the internet. *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024) ("Section 631(a) prohibits telephonic wiretapping, which does not apply to the internet. . . ."); *Swarts*, 689 F. Supp. 3d at 743 ("Courts have uniformly interpreted this clause as applying only to communications transmitted over telephones and not those transmitted over the internet."). Plaintiffs base their allegations entirely on internet usage. Thus, their § 631(a) claims fail.[19]

#### ii. <u>No Interception In Transit</u>

Additionally, Plaintiffs' conclusory allegations that information was intercepted "while the electronic communications were in transit" ignores the functionality of third-party software like the Meta and TikTok Pixels and Taboola. FAC ¶ 168. The FAC describes that when a Paramount+ user enters the address of a Paramount+ website page in their browser, their computer sends a request to Paramount to send them the particular page (known as a "GET" request); only after that request is received by Paramount—i.e., after it has completed its "transit" to Paramount—does the Pixel then cause another, second transmission of information from Paramount to Meta. *See* FAC ¶ 39. Thus, the Pixels and Taboola will only receive the allegedly disclosed information in a second transmission of information after Paramount+ receives a GET request. *See e.g.*, FAC ¶ 56 (describing how Facebook "receiv[es] information from businesses like Defendant"); FAC ¶ 84

[19] The cases Plaintiffs cite to argue § 631(a) applies to the internet writ large are inapposite. FAC ¶ 165. *Matera v. Google Inc.* held that § 631(a) could apply to email but did not interpret the statute to apply to all internet communications. 2016 WL 8200619, at *20 (N.D. Cal. Aug. 12, 2016). The claims in *Javier v. Assurance IQ* arose when a user input information into an online form to request an insurance quote and a third party session replay provider recorded his interaction—here the alleged disclosures did not involve use of such software. *See* 2022 WL 1744107 at *1 (9th Cir. May 31, 2022).

("the information TikTok receives from Defendant"); *see also Cody*, 2025 WL 240763, at *2 (holding the in-transit requirement was not met when a third-party did not "directly capture" content "while in transit" when online customer service chat bot conversations were transmitted to a third-party before being routed to the website's owner); *Boulton v. Cmty.Com, Inc.*, No. 23-3145, 2025 U.S. App. LEXIS 1819, at *3 (9th Cir. Jan. 28, 2025) (affirming dismissal of CIPA claim when Defendant "could have only read or attempted to read [Plaintiff's] text after it was received . . . so the text could not have been accessed 'in transit[.]').

**iii. <u>No Access to the Content of Communications</u>**

Plaintiffs' claims also fail because § 631(a) only imposes liability when the "contents or meaning" of a message or communication are accessed without consent. While CIPA does not define the phrase "contents or meaning," California courts have distinguished between "contents" and "record information" when interpreting the clause. "Contents" under Section 631(a) "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *See Zynga*, 750 F.3d at 1106-07 (distinguishing between "contents" under § 631(a) and "record information," which "includes the name, address, and subscriber number or identity of a subscriber or customer" and Facebook IDs and browser identifiers) (cleaned up). Paramount+ at most transmits "record information," not "contents or meaning" under § 631(a). *See Mikulsky v. Bloomingdales, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (holding that record information includes "interactions" that are tracked on a website, such as "button clicks, mouse movements, scrolling, resizing . . . key presses, page navigation, changes to visual elements in the browsers," and "network requests"); *Hammerling*, 615 F. Supp. 3d at 1093 (holding that a URL is not "content" when it reveals only "a general webpage address and basic identification information.").

#### *c. Plaintiffs Have Not Plausibly Alleged that CBSI Aided and Abetted a § 631 Violation*

Because Paramount+ cannot eavesdrop its own conversations—in this case a user requesting to view a certain video—Plaintiffs could only establish liability under an aiding and abetting theory, by arguing that CBSI facilitated others' § 631(a) violations. However, Plaintiffs have not plausibly alleged facts to support an aiding and abetting claim, because California courts apply the common law aiding and abetting definition to § 631(a), wherein "a person may be held liable . . . if they: (a) know the other's conduct constitutes a breach of duty and give substantial assistance or encouragement to the other to so act or (b) give substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Esparza v. UAG Escondido A1 Inc.*, No. 23CV0102, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (cleaned up). Even if Plaintiffs could plausibly allege that Meta, TikTok, and Taboola violated CIPA, they cannot demonstrate CBSI had the requisite intent to violate CIPA. In California, "an aider and abettor's mental state must be at least that required of the direct perpetrator." *People v. McCoy*, 25 Cal. 4th 1111, 1118 (2001). Plaintiffs fail to plead knowledge of any third-party misconduct, much less the required intent. FAC ¶ 167-73.

### *2. Plaintiffs' Pen Register and Trap and Trace Claim Under § 638.51 Fails*

Plaintiffs also fail to plausibly allege a violation of CIPA § 638.51, which prohibits "install[ation] or use [of] a pen register or trap and trace device without first obtaining a court order." Cal. Pen. Code § 638.51(a).

#### *a. Plaintiffs Do Not Plead They Used a Telephone*

Plaintiffs fail to allege a violation of CIPA § 638.51 because they do not allege they used a telephone to access Paramount+. *See* FAC ¶¶ 5, 9, 13 (stating Plaintiffs viewed Paramount+ on their computers). A pen register is a "device or process that records or decodes dialing, routing,

addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). A trap and trace device does the same for incoming communications. *Id.* at § 638.50(c). This comports with the traditional understanding that a "pen register is a mechanical device that simply records the telephone numbers dialed on a given telephone." *United States v. Rodriguez*, 968 F.2d 130, 135 (2d Cir. 1992). Indeed, the Office of the California Attorney General has recognized that "[a] 'pen register' records the numbers dialed out from a particular telephone line[,]" and that a "'trap and trace device' records the originating telephone numbers of the calls dialed into a particular telephone line." 86 Ops. Cal. Atty. Gen. 198 (2003) (citations omitted).

Plaintiffs cite *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) for the proposition that CIPA's "pen register" definition is broad enough to include the Meta and TikTok Pixels and Taboola. FAC ¶ 179. *Greenley* is inapposite as the court there found "a private company's surreptitiously embedded software installed in a telephone" might "constitute a 'pen register'" under the statute. 684 F. Supp. 3d at 1050. California state trial courts recently sustained defendants' demurrers regarding Section 638.51 claims in cases involving alleged collection of IP addresses where plaintiffs failed to specify that they used a telephone. *See, e.g.*, *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024).

***b. Plaintiffs Lack a Legally Protected Privacy Interest in the Information at Issue***

In addition to the recent S.D.N.Y. decision dismissing a § 638.51 claim for lack of standing, California state courts have repeatedly rejected attempts to apply § 638.51 to the collection of IP addresses and other online data because there is no injury that would authorize individuals to bring a claim under CIPA, which requires that a person be "injured by a violation of this [statute]." Cal. Pen Code § 637.2(a); *see also, e.g.*, *Xu*, 2025 WL 488501, at *5 ("Xu has not identified any legal

authority—contemporary or historical—that recognizes a protected privacy interest in IP address-like information, such that Reuter's disclosure of it would inflict a concrete harm."); *Licea*, 2024 WL 1698147, at *4 ("[P]ublic policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator."); *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413 (Cal. Super. Ct. Oct. 2, 2024).[20] [21] Plaintiffs have not plausibly alleged facts distinguishing the technologies at issue here from those in the cases, which concerned third-party services collecting IP addresses.

Furthermore, individuals have no privacy interest in IP addresses and similar information where, as here, such data does not provide a "detailed and comprehensive record of a person's movements." *United States v. Hernandez*, 2020 WL 3257937, at *21 (S.D.N.Y. June 16, 2020); *United States v. Kidd*, 394 F. Supp. 3d 357, 366 (S.D.N.Y. 2019) (no reasonable expectation of privacy in IP address where information did not provide the ability to "precisely track [plaintiff's] daily movements"). Indeed, where "monitoring IP address traffic" reveals only "whether an Internet subscriber (or, more precisely, a person who uses the subscriber's Internet connection) is home and using the Internet," there is no reasonable expectation of privacy. *See United States v. Ulbricht*, 858 F.3d 71, 98 (2d Cir. 2017). Here, the Meta Pixel at most transmits information about

[20] This Court has recognized "when there is no other binding authority on which to rely," as here, "federal courts may consider unpublished California opinions[.]" *Nat'l Union Fire Ins. Co. v. Seneca Fam. of Agencies*, 255 F. Supp. 3d 480, 486 n.3 (S.D.N.Y. 2017) (citation omitted).

[21] *Sanchez v. Cars.com, Inc.*, No. 24STCV13201 (Cal. Super. Ct. Jan. 27, 2025), attached as Exhibit 1 (sustaining a demurrer of a CIPA § 638.51 "pen register" and "trap and trace" claim without leave to amend where "Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing routing information." (citations omitted)); *Aviles v. LiveRamp, Inc.*, No. 24STCV19869 (Cal. Super. Ct. Jan. 28, 2025), attached as Exhibit 2 (holding that Aviles failed to plausibly allege use of a pen register because "the analog of the number dialed by a telephone . . . is the IP address and related information of a website accessed by a computer – but not the computer's own IP address or identifying information," and because Aviles did not allege that defendant used any software to collect outgoing addressing information from its visitors).

website pages one visits. *See Martinez*, 2024 WL 4367406, at *7-9. Similarly, the TikTok Pixel does not transmit information that would allow an ordinary person to identify a specific individual—it collects information to determine "the geographic location of an event" and "the device make, model, operating system, and browser information."[22] And Taboola, as Plaintiffs allege, only collects and transmits IP addresses. FAC ¶¶ 92, 93. Therefore, Plaintiffs have not plausibly alleged facts needed to support their CIPA § 631(a) or § 638.51 claims.

## V. **Plaintiffs Fail to State a Claim Under the Federal Wiretap Act**

"The analysis for a violation of CIPA is the same as that under the Federal Wiretap Act." *E.g.*, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). Given the deficiencies in Plaintiffs' CIPA claims, Plaintiffs' Wiretap Act claims also fail—indeed, Defendant is a party to the communication, the communications were not intercepted in transit, and Plaintiffs do not have a privacy interest in non-user-identifying information, like their IP address, allegedly collected here. *See id.*; *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).

Plaintiffs' Federal Wiretap Act claims should also be dismissed because CBSI qualifies for § 2511(2)(d)'s liability exemption, which states that "[i]t shall not be unlawful . . . to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception . . . ." This court previously held that advertising technology fell within this exception when it placed cookies on visitors' browsers when they visited "DoubleClick-affiliated Web sites" and collected information about visitors via those cookies. *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 502-03, 514 (S.D.N.Y. 2001). The information included "names, e-mail addresses, home and business addresses, telephone numbers, searches performed on the Internet, Web pages or sites

[22] *About TikTok Pixel*, TikTok (Oct. 2024), https://ads.tiktok.com/help/article/tiktok-pixel.

visited on the Internet . . ." *Id.* at 503. Section 2511(2)(d) applied because "DoubleClick-affiliated Web sites are 'parties' to plaintiffs' intercepted communications under the Wiretap Act [who] . . . consent to DoubleClick's interceptions," and "plaintiffs . . . failed to allege that DoubleClick ha[d] intercepted plaintiffs' communications for a 'criminal or tortious' purpose" because they did not allege that DoubleClick's primary motivation was to injure plaintiffs. *Id.* at 518-19. Paramount+ is similar to the DoubleClick-affiliated Web sites because it is a party to the communications allegedly intercepted: As in *Double Click*, CBSI uses the internet to host Paramount+ and uses the third-party technologies referenced in the FAC. Plaintiffs' Federal Wiretap Act claims fail.

## VI. Plaintiffs' Claims Are Barred By Paramount+'s Mandatory Arbitration Provision

Plaintiffs violated the Paramount+ Terms by not pursuing mandatory arbitration.[23] "[W]hen parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms." *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 198 (2001). Plaintiffs must follow the mandatory dispute resolution procedures before bringing a case in court. *Optimus Commc'ns v. MPG Assocs., Inc.*, 841 F. Supp. 2d 722, 724-25 (E.D.N.Y. 2012) (granting Rule 12(b)(6) motion based on failure to comply with provision requiring arbitration of disputes).

## CONCLUSION

For all the foregoing reasons, CBSI respectfully requests that the Court dismiss the Complaint in its entirety.

[23] *See Fernandez*, 2016 WL 2903274, at *3 ("Courts may . . . take judicial notice of information contained on websites where 'the authenticity of the site has not been questioned.'").

Dated: February 14, 2024

Respectfully submitted,

*/s/ David L. Yohai*
David L. Yohai
David R. Singh
Blake J. Steinberg
Zoe A. Buzinkai
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-800
Facsimile: (212) 310-8007
david.yohai@weil.com
david.singh@weil.com
blake.steinberg@weil.com
zoe.buzinkai@weil.com

*Attorneys for Defendant CBS Interactive Inc.*

**Word Count Certification**

Pursuant to Local Rule 7.1(c), I hereby certify that the total number of words in this memorandum, excluding the caption, table of contents, table of authorities, signature block, and word count certification is 8,775.

/s/ *David L. Yohai*
David L. Yohai