**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VICTOR CHO, GIOVANNI STEWART, AND DAVID L'ABBE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CBS INTERACTIVE INC.,<br><br>Defendant. | Case No. 1:24-cv-08312-JPO |

**DECLARATION OF MAUREEN SARAF**

Pursuant to 28 U.S.C. § 1746, I, Maureen Saraf, declare under penalty of perjury as follows:

1. I am Senior Director for Customer Care at CBS Interactive Inc. ("CBSI") where I oversee Paramount+'s Customer Care team. I am over 18 years of age and make this declaration of my personal knowledge, investigation, discussions with representatives of CBSI and/or review of CBSI's business records and information, and, if called to do so, could testify competently to the facts stated herein.

2. I submit this Declaration in Support of Defendant CBSI's Motion to Dismiss the First Amended Complaint, and its Motion to Compel Arbitration, Dismiss the Class Claims, and Stay the Case in Light of the First Amended Complaint.

3. Paramount+ is a premium video streaming service which offers Paramount-branded entertainment and media content.

*Plaintiff Victor Cho's Agreement to the Terms*

4. CBSI's records indicate that Plaintiff Cho created a Paramount+ account on August 21, 2024 through his Spectrum cable subscription. A true and correct copy of Plaintiff's account

information, including the date of Plaintiff's account creation, is attached hereto as Exhibit A.

5. At the time Plaintiff Cho created his account in August 2024, he could create a Paramount+ account with a Spectrum subscription starting on paramountplus.com or spectrum.com.

6. Regardless of the website Plaintiff Cho started on, he was ultimately directed back to paramountplus.com to create his Paramount+ account. Plaintiff Cho could not create a Paramount+ account without going through this sign-up process.

7. Plaintiff created his Paramount+ account on the "Create your Account" page on the Paramount+ website. A true and correct screenshot illustrating the account creation page is attached hereto as Exhibit B.

8. On the "Create your Account" page, Plaintiff Cho was prompted to enter his name, email, date of birth, zip code, and gender. *See* Exhibit B. Here, the website displayed text that read: "[b]y pressing 'Continue', you confirm that you have read and agree to the Terms of Use and acknowledge our Privacy Policy." *Id.* The words "Terms of Use" and "Privacy Policy" were hyperlinks that appeared in blue, distinguishing them from the surrounding text, and clicking on them led to the Terms of Use and Privacy Policy, which Plaintiff could easily scroll through and read.

9. To finish signing up, Plaintiff Cho affirmatively clicked the "CONTINUE" button, confirming that he agreed to the Terms of Use. *Id.*

10. Plaintiff Cho affirmatively assented to the Paramount+ Terms of Use effective as of January 24, 2023 (the "Paramount+ Terms"). The Paramount+ Terms are currently effective and are posted on the website. A true and correct copy of the Paramount+ Terms is attached hereto as Exhibit C.

*Plaintiff David L'Abbe's Agreement to the Terms*

11. CBSI's records indicate that Plaintiff L'Abbe created a Paramount+ account on August 9, 2023 through his Walmart+ subscription.[1] A true and correct copy of Plaintiff L'Abbe's account information, including the date of his account creation, is attached hereto as Exhibit D.

12. After being redirected from walmart.com, Plaintiff created his Paramount+ account on the "Create a Paramount+ Account" page on the Paramount+ website. A true and correct screenshot illustrating the account creation page is attached hereto as Exhibit E.

13. On the "Create a Paramount+ Account" page, Plaintiff L'Abbe was prompted to enter his name, email, date of birth, zip code, and gender. *See* Exhibit E. Here, the website displayed text that read: "[b]y pressing 'Continue', you confirm that you have read and agree to the Terms of Use and acknowledge our Privacy Policy." *Id.* The words "Terms of Use" and "Privacy Policy" were hyperlinks that appeared in blue, distinguishing them from the surrounding text, and clicking on them led to the Paramount+ Terms of Use and Privacy Policy, which Plaintiff could easily scroll through and read.

14. To finish signing up, Plaintiff L'Abbe affirmatively clicked the "CONTINUE" button, confirming that he agreed to the Terms. *Id.*

15. Plaintiff L'Abbe created a Paramount+ account in August 2023 and affirmatively assented to the current Paramount+ Terms, available on the Paramount+ website. Exhibit C.

*Plaintiff Giovanni Stewart's Agreement to the Terms*

16. CBSI's records show that Plaintiff Giovanni Stewart initially subscribed to CBS All Access—which was later rebranded to Paramount+—on March 6, 2015. A true and correct copy of Plaintiff Stewart's account information, including the dates of his subscription periods, is

[1] To my knowledge, Paramount+ was not offered through Walmart+ until August 2022.

attached hereto as Exhibit F.

17. At the time Plaintiff Stewart subscribed to CBS All Access, individuals were required to agree to the CBS All Access Terms of Use. Indeed, above the sign-up button for CBS All Access, the website displayed language stating: "[b]y registering you become a member of the CBS Interactive family of sites and you have read and agree to the Terms of Use . . . ." A true and correct copy of an archived version of this webpage, also accessible on the Wayback Machine, is attached hereto as Exhibit G.

18. The phrase "Terms of Use" was a hyperlink that was underlined and appeared in blue, distinguishing it from the surrounding text, and clicking on it led individuals to the CBS All Access Terms of Use, which they could easily scroll through and read. A true and correct and copy of these Terms is attached hereto as Exhibit H. These Terms required arbitration of any disputes or claims "arising out of or relating to the Services[,]" and provided that CBSI "may change these Terms in the future[,]" and that "[i]f you continue to use the Services after we change these Terms, you accept all changes." *See* Exhibit H § 1, 17.

19. After his initial CBS All Access subscription, Plaintiff Stewart re-subscribed to CBS All Access and later Paramount+ on certain occasions, including October 11, 2022. *See* Exhibit F. That subscription lasted until May 8, 2023. *Id.* In January 2023, while he was an active subscriber of Paramount+, Plaintiff Stewart received an email from CBSI informing him of the updated Paramount+ Terms associated with his Paramount+ account. A true and correct copy of the template for this email is attached hereto as Exhibit I. The email had the topic line "Our Updated Terms of Use" and clearly stated that it was "From: Paramount+." *Id.* The first line of the email stated, "[w]e have updated our Terms of Use." *Id.* The following sentence further informed Plaintiff that "[t]he updates contain important information about your legal rights,

including updates to the arbitration clause." *Id.* The phrase "Terms of Use" was a hyperlink that appeared in blue, distinguishing it from the surrounding text, and clicking on it led Plaintiff to the Terms, which he could easily scroll through and read. *Id.* The bottom of the email noted that Plaintiff received the email "because of your Paramount+ subscription." *Id.* CBSI's records indicate that this email was delivered to Plaintiff Stewart and that it was opened.

20. After he received this email, Plaintiff Stewart continued to use Paramount+, and re-subscribed on multiple occasions, including most recently on October 8, 2024. *See* Exhibit F. This subscription remains active. *Id.*

*The Paramount+ Terms of Use*

21. The Paramount+ Terms expressly call for arbitration of "**ANY DISPUTE WITH OR CLAIM** AGAINST THE OTHER (A "CLAIM") ARISING OUT OF OR RELATING IN ANY WAY TO THE SERVICES OR THESE TERMS" (with "Service" defined to encompass "websites, applications, and other products or services that include an authorized link to these Terms"). Exhibit C § 1 (emphasis added). The Terms further provide that "[c]lass arbitrations and class actions are not permitted[.]" *Id.* Additionally, the Terms stated that "[y]ou and we agree that the U.S. Federal Arbitration Act governs the interpretation and enforcement of this provision, and that you and we are each waiving the right to a trial by jury or to participate in a class action." *Id.* The arbitration clause and class waiver were in all caps and clearly labeled with a bolded heading titled "**Dispute Resolution; Arbitration Agreement**." *Id.*

22. The Terms further provide that the "[a]ny such arbitration shall be governed by the applicable rules of National Arbitration & Mediation ('NAM') (including the Comprehensive Dispute Resolution Rules and Procedures and/or the Supplemental Rules for Mass Arbitration Filings . . .), as modified by this Section 1 [of this arbitration agreement] . . . and will be

administered by NAM." *Id.* at § 1.2.

23. The introductory section of the Terms also provide that, "[w]e may change these Terms in the future, so we encourage you to review periodically the Terms of Use applicable to each Service you use. The most current version of the applicable Terms of Use (along with its effective date) will be posted on each of the Services. Changes to these Terms will be effective immediately or, if required by law, 30 days after notice to you, which may be given by posting the updated Terms on our Services or by email. If you continue to use the Services after we change these Terms, you accept all changes." Exhibit C.

*Plaintiffs' Use of the Paramount+ Website*

24. Plaintiffs assert that their video watching information was disclosed via the Meta Pixel. FAC ¶ 8, 12, 16. The Meta Pixel was removed from all video pages on the Paramount+ website on September 28, 2022.

25. As noted above, Plaintiff Cho signed up for Paramount+ in August 2024, nearly two years after CBSI removed the Meta Pixel from all video pages on the Paramount+ website.

26. As noted above, Plaintiff L'Abbe signed up for Paramount+ in August 2023, nearly one year after CBSI removed the Meta Pixel from all video pages on the Paramount+ website.

27. Accordingly, Plaintiff Cho and Plaintiff L'Abbe never watched videos on the Paramount+ website while the Meta Pixel was active on video pages, and information about their video watching activity on Paramount+ therefore could not have been disclosed via the Meta Pixel.

28. As of the date of this declaration, Plaintiff Stewart is currently an active Paramount+ subscriber and has watched content through the Paramount+ service, including streaming on his Apple iOS device in 2024. *See* Exhibit F.

29. Plaintiff Stewart has not watched videos on the Paramount+ website since

November 2, 2021. *See id.*

I declare under penalty of perjury that the forgoing is true and correct. Executed on this 14 day of February 2025 in California.

Maureen Saraf